[No. 16600. *En Banc.* February 10, 1923.]

FREDERICK C. ROBERTSON *et al., Respondents,* v.
IDA A. WATERMAN, *Appellant.*[1]

LANDLORD AND TENANT (91, 92)—EVICTION—PERSONS LIABLE—DEFENSES—ACTS OF THIRD PERSONS—TENDER OF POSSESSION BY LESSOR. The owner of premises is not liable for a wrongful eviction through proceedings ousting a lessee, which were instituted and maintained in her name by strangers without her authority or ratification, and where she tendered the lessee possession on the conclusion of the litigation.

TENDER (7)—CONDITIONS. A tender of possession of premises to an ousted tenant is not conditional from the fact that notice was given that past due rent was not waived, where there was no requirement that the rent be paid before entry.

APPEAL (475)—SUBSEQUENT APPEALS — QUESTION CONCLUDED — THEORY OF CASE. Where, on a former appeal, appellant prevailed upon the theory that an action of unlawful detainer against her was not authorized or ratified by the plaintiff, she cannot assert to the contrary that there was a ratification rendering plaintiff in that case guilty of wrongful eviction.

LANDLORD AND TENANT (93)—EVICTION—MEASURE OF DAMAGES. When a lease obligated a tenant to erect a building which was to become the property of the landlord, the cost of the building cannot be recovered as special damages for a wrongful eviction, the measure of damages being the difference between the value of the use of the premises for the term and the rent reserved for the same period.

[1]Reported in 212 Pac. 1074.

DAMAGES (40)—PUNITIVE OR EXEMPLARY DAMAGES—ALLOWANCE. Punitive or exemplary damages cannot be recovered for a wrongful eviction of a tenant from leased premises.

LANDLORD AND TENANT (94)—EVICTION—DAMAGES—EVIDENCE— SUFFICIENCY. In an action for wrongful eviction, findings that plaintiff sustained no damages are sustained, though she erected a building costing $45,000, where it appears that the investment was unprofitable from the start, the receipts from the property were less than the fixed charges, the lease had no market value, and there is no evidence from which it can be determined with certainty that there would be a change in the future.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered December 28, 1920, upon findings in favor of the plaintiffs, in an action for wrongful eviction, tried to the court. Reversed.

*Carl L. Shuff, Roy A. Redfield,* and *Danson, Williams & Danson,* for appellant.

*Robertson, Miller & Robertson* and *Allen, Winston & Allen,* for respondents.

FULLERTON, J.—On May 31, 1911, one Julia F. Anthony, then the owner of a certain tract of land situated in the city of Spokane, leased the same to one George H. Martin for a term of thirty years beginning on September 1, 1911, and ending on September 1, 1941. By the terms of the lease, the rental reserved was payable monthly in advance; the amounts, however, were subject to variance during the different periods of the term. For the first five-year period, the sums payable as rental amounted to three hundred and fifty dollars per month, and for the second five-year period, to the sum of four hundred dollars per month. For the second ten-year period the rental was to be five per centum on the fair market value of the premises, to be ascertained at the beginning of the period. For the third or last ten-year period, the rate was to

be the same; the fair market value to be ascertained at the beginning of such period. In addition to the sums reserved as rentals, the lessee agreed to pay "the sidewalk taxes and all regular county and city taxes lawfully levied and imposed on the premises and buildings thereon" at the time the same became due. The lessee, as a part consideration for the lease, also undertook and promised to erect at his own cost a brick building on the land, "covering all of the demised premises," to be completed to one story in height with a basement, on or before September 1, 1912, and to three stories in height on or before September 1, 1921. The lease contained a forfeiture provision to the effect that it might be terminated by the one party whenever a breach of any of its conditions was committed by the other. It provided that the lessee could surrender the lease at any time by giving the lessor notice to that effect, and provided that, when the lease was terminated for any cause or in any manner, the permanent improvements placed thereon should become the property of the lessor.

On September 3, 1911, the lessor, Anthony, sold and conveyed the property to the defendant, Ida A. Waterman. The lessee, Martin, shortly after the execution of the lease, sold and assigned it to one Corbin, who, in turn, on or about April 10, 1912, sold and assigned it to the plaintiff Frederick C. Robertson.

After acquiring the lease, Mr. Robertson entered into possession of the property, and between that time and December 1, 1912, erected a three-story brick building thereon, with a basement, complying, in so far as the character of the building was concerned, with the requirements of the lease. The cost of the building erected was between forty-five thousand and fifty thousand dollars.

Mr. Robertson failed to pay the rentals accruing according to the terms of the lease for the months of February, March, April, May and June of the year 1916, aggregating seventeen hundred and fifty dollars, and failed to pay the taxes for the last half of the year 1913, and for the years 1914 and 1915. There was a dispute between Mr. Robertson and the owner of the premises as to the proportion of these taxes he was obligated under the terms of the lease to pay, but concededly he was in default on July 1, 1916, on account of taxes, in a sum in excess of two thousand dollars.

On July 15, 1916, certain agents of the owner, purporting to represent her in the proceedings, served upon Mr. Robertson and the mortgagee of his interests a notice either to pay the rentals and taxes due or surrender the possession of the property to the owner. Mr. Robertson did neither, and on the twentieth day of the same month the agents, in the name of the owner, began an action under the statute of forcible entry and detainer to recover possession. On commencing the action, a writ of restitution was sued out, and under the writ Mr. Robertson was ousted of possession and the property restored to the owner. Later on the cause was brought to trial, which resulted in a money judgment against Mr. Robertson and a forfeiture and cancellation of the lease. Appeal was taken to this court from the judgment, where the judgment was reversed with direction to dismiss the action. *Waterman v. Robertson,* 103 Wash. 553, 175 Pac. 177. On the return of the remittitur in the appealed cause and the dismissal of the action. the owner tendered possession of the property to Mr. Robertson, which tender he refused.

The present action was instituted in September, 1920, by Mr. Robertson against the owner to recover in damages as for a wrongful eviction. After issue

joined, the action was tried by the court sitting without a jury. The court found that the unexpired term of the lease at the time of the eviction ''had no market value over and above the taxes and the current expenses which the plaintiff was obliged to pay.'' It found, however, that Mr. Robertson was entitled to recover as special damages the value of the building erected by him on the premises. This value the court found to be fifty-five thousand dollars, and, after deducting therefrom certain obligations then accrued in rental and taxes, entered a judgment in Mr. Robertson's favor in the sum of forty thousand four hundred thirteen dollars and forty-one cents. It is from this judgment that the appeal before us is prosecuted.

Many errors are assigned for reversal, all of which have been extensively argued both orally and in the briefs of counsel. The conclusion we have reached on certain of the contentions, however, renders it unnecessary to consider others. The first of these to be noticed is that the respondent has no cause of action against the appellant for a wrongful eviction. This contention is founded upon the opinion of this court rendered in the cause in which the respondent was evicted. The appellant points out that the decision was rested on the ground that she did not authorize the eviction proceedings, hence was a party in name only; and from this premise draws the conclusion that she has been guilty of no wrong which gives rise to a cause of action against her. The appellant made the contention in the court below, and it would seem that it should have been allowed to prevail. That it is a correct interpretation of the opinion, there can be no doubt. While a number of other errors were assigned for reversal of the cause, these were brushed aside as having ''little or no merit in law,'' and the statement made that the ''matter . . . vital and fatal to the action,'' was that the at-

torneys purporting to represent the appellant in the action had no authority to institute and maintain it. In effect, it was held that the proceedings were instituted and maintained by persons standing as strangers to the appellant, and this being true, she cannot be held to answer for their wrong. Moreover, on the reversal of the judgment by this court, the appellant tendered the possession of the premises to the respondent. True, he says the tender was conditional, but we cannot so regard it. The keys to the building were tendered him in person, and while the tender was accompanied by a writing containing the perhaps unnecessary statement that the appellant did not thereby waive her claims against him for the unpaid rent and unpaid taxes, there was no requirement that these be paid before he entered, or that he thereby acknowledge that any such were due. He could, therefore, have taken possession without any waiver of right.

But the respondent says that the appellant's acts amounted to a ratification of the acts of the attorneys, and that she by that means made their wrong her wrong. This question is not now open to the respondent. On the former appeal, with all of the facts before the court which now appear on the question, it was urged by the appellant herself that she had ratified the acts of her attorneys, and the question, while not noticed in the opinion of the court, was necessarily decided. The respondent cannot now have a change of front. Having prevailed in the former action on the theory that there was no ratification, he cannot prevail in this action on the theory that there was such a ratification.

But there are other and more meritorious reasons why the respondent cannot recover. The first is that he cannot recover, as special damages, for the value

of the building he erected on the leased premises. For a wrongful eviction from leased premises, the law allows a recovery for all losses that are the natural and proximate consequences of the act. This is generally met when a recovery is allowed for the difference between the value of the use of the premises for the unexpired term and the rent reserved. Instances sometimes arise where the tenant suffers a special damage not met by a recovery under the general rule, and in cases of this sort the tenant is allowed to recover these special damages in addition to the damages recoverable under the rule. But nothing in the nature of special damages is presented by the present record. The respondent did not, because of his eviction, suffer as a special loss the value of the building he erected on the leased premises. By the terms of the lease he was obligated to erect the building. It was to become the property of his landlord at the expiration of the term of the lease. By holding for his full term the utmost he could gain would be the difference between the value of the use of the premises for the term and the rent reserved for the same period. When he recovers this difference, manifestly he is made whole for the loss suffered by the eviction, and to allow in addition thereto a recovery for the value of the building is to allow a recovery for something which did not result in a loss to the tenant.

But, on this question, the respondent's learned counsel say:

"Here are the facts presented upon this question. A building is erected by the respondent on ground owned by the appellant. The building is completed about January 1, 1912. Under the terms of the lease, which was for 30 years, at the end of said time the building would become the property of the landlord. At the date of the wrongful eviction the tenant had therefore had three years and seven months use of the

building. The landlord therefore appropriated to her own use 26 years and 5 months use of the building. Now it cannot be doubted that the landlord has benefited and will benefit to the extent of thousands of dollars by her taking possession of this building. The existence of the building upon her land means that she may get and has been getting substantial returns from it, negligently, carelessly and badly rented as it has been. The question, therefore, presented is: May the landlord permit the tenant to make valuable improvements upon the landlord's land, improvements which common sense tells us improves the actual and the rental value of the land immensely, and then take wrongful possession of the land and building and say in court that the tenant has lost nothing? If this can be done, then indeed is there no justice in the law.''

It seems to us that this argument is beside the question. The rights of the parties are to be measured by the terms of the lease, and if by the lease the appellant made a good bargain she is entitled to the benefit of that bargain. Measured by the terms of the lease, the appellant gains, by the rule we have announced, nothing more than the terms of the lease award her. The building was to be hers in any event. It was a part of the consideration for the lease, and she was entitled to it as well as to the rent reserved. When, therefore, she pays to the evicted tenant the excess value of the use of the premises over the rent reserved, she has paid all the loss that the tenant has legally suffered by the eviction, and all that the lease requires her to pay. Surely, neither law nor justice requires her to do more.

The cases cited by the respondent to sustain the conclusion of the trial court we shall not review. Only one (*Miller v. Uhlman,* 198 Fed. 233), as we read them, tends to support the conclusion. There were facts in the cited case which the learned district judge writing the opinion emphasizes and which are not present here.

But if these facts do not differentiate the cases, and the opinion can be construed to hold it to be the rule that a tenant for a term of years, who erects buildings upon the leased premises pursuant to the requirements of the lease and which are to become the property of the landlord at the termination, can, on a wrongful eviction during the term, recover the value of the buildings in addition to the difference between the value of the use of the leased premises and the rent reserved, we cannot follow the holding. In our opinion, it is to allow the evicted tenant to recover as for a loss which he does not legally suffer.

Nor can the recovery be justified on any theory of punitive or exemplary damages. Compensatory damages are alone recoverable for any form of wrong in this state, unless the legislature has otherwise specially provided for the particular wrong; and it has not so provided for wrongs of this character. *Spokane Truck & Dray Co. v. Hoefer*, 2 Wash. 45; *Bronson v. Syverson*, 88 Wash. 264, 152 Pac. 1039.

The remaining question is whether the respondents have shown any actual damage. The trial court, as we have stated, found that the lease had no market value at the time of the eviction; that is to say, found that the value of the use of the property for the then unexpired term was not in excess of the rent reserved and payable. The evidence, we think, abundantly justifies this conclusion. This investment proved unprofitable to the lessee from the start. Between the time of the erection of the building and the time of the eviction, the receipts from the property were less than the fixed charges by more than two thousand dollars; and during the period between the eviction and the time of the trial of the action, the percentage of loss, measured by the same standard, was even greater. The cause of this is shown in the record. The build-

ing was erected for a business lawful at the time it was erected, but which cannot now be lawfully conducted therein, and no substituted use seemingly can be found which will make it yield the anticipated income, or an income sufficient to meet the rentals reserved in the lease. Nor is there any evidence from which it can be determined with certainty that the future will bring a change in this respect. While there is opinion evidence to that effect, it has no better foundation than mere speculation, and opposed to it there is evidence of the same nature of equal cogency. Damages for a wrong which are contingent and uncertain cannot be recovered. We are aware that the rule embraces only such damages as are not the certain result of wrong—not such as are certain to result but uncertain in amount—but the evidence here does not justify the conclusion that any damage at all will result.

The necessary conclusion is that plaintiffs are entitled to recover nominal damages only. The judgment appealed from is reversed and the cause remanded with instructions to enter a judgment to that effect.

All concur.