[No. 155.   Decided February 5, 1891.]

SPOKANE   TRUCK   AND   DRAY   COMPANY   v.   J.   GUS.
HOEFER AND MINA HOEFER.

NEGLIGENCE — NECESSARY CARE — INSTRUCTIONS — PUNITIVE
DAMAGES.

Where the court has already instructed the jury that if it did not appear by a preponderance of the evidence that the injury was occasioned by defendant's negligence they should find for defendant, it is not error for the court to refuse to instruct that if the injury occurred by defects in the wall caused by the elements, which were not discovered by ordinary care, the plaintiff cannot recover in the absence of further negligence on the part of the defendant.

A person hoisting a heavy safe in a public thoroughfare where people are constantly passing is bound to use such care as the nature of the employment and the situation and circumstances of the same require of a prudent person experienced and skilled in such or similar work.

The doctrine of punitive damages is unsound in principle, and such damages cannot be recovered in this state, although the defendant may have been guilty of gross negligence.

*Appeal from Superior Court, Spokane County.*

The facts are fully stated in the opinion.

*Turner & Graves,* and *W. C. Jones,* for appellant.

The better rule always was that punitive damages had no proper place in the law, and while we admit that the weight of authority is in favor of their allowance, the later and modern authorities are against it, and in many states where the doctrine is too firmly fixed to be rooted out by judicial decisions, the courts have felt called on to deplore the fact that the contrary rule was not originally established. 2 Greenl. Ev., § 253, and note 2; 3 Pars. Cont. (6th ed.), 171; *Fay v. Parker,* 53 N. H. 342 (16 Am. Rep. 270); *Bixby v. Dunlap,* 56 N. H. 465 (22 Am. Rep. 475); *Smith v. Holcomb,* 99 Mass. 552; *Meagher v. Driscoll,* 99 Mass. 281 (96 Am. Dec. 759); *Fillebrown v. Hoar,* 124 Mass. 580; *Stewart v. Maddox,* 63 Ind. 57; *Koerner v. Oberly,* 56 Ind. 284 (56 Am. Rep. 34); *Boyer v. Barr,* 8 Neb. 68 (30 Am. Rep. 814); *Welch v. Ware,* 32 Mich. 84; *Elliott v. Van Buren,* 33 Mich. 49 (20 Am. Rep. 668); *Stilson v. Gibbs,* 53 Mich. 280; *Murphy v. Hobbs,* 7 Col. 541; (49 Am. Rep. 366); *Brown v. Swineford,* 44 Wis. 282 (28 Am. Rep. 582); *Quigley v. Ry. Co.* 11 Nev. 350 (21 Am. Rep. 757).

*Jesse Arthur,* for appellee.

The opinion of the court was delivered by

DUNBAR, J. — The plaintiff, Mina Hoefer, had her arm broken and was otherwise injured by the falling of a safe, which was being hoisted by the defendant into a five-story brick building, known as the "Eagle Block," in the city of Spokane Falls. Plaintiff had been to the office of her physician in the second story of said building, where she was accustomed to go for treatment daily, and while returning from such a visit on the 7th day of February, 1890,

she passed down the stairway and into the court or opening under the hoisted safe just as it fell. The said stairway started from the entrance of said court, or well, on Stevens street, and landed on the north end of the covered way on the second floor of the rear building. Dr. Thiel's office, where Mina Hoefer had been just before she was injured, was in a room on the second floor of the Stevens street building, and was the first room north of the Stevens street entrance. There was one other and perhaps main entrance to the building from Riverside avenue, and it is claimed by the defendant that the court, or well, on that side of the block was used for hoisting heavy articles to the upper stories of the building, and was not generally employed by the public as an entrance to the upper stories of the block; yet we think it fairly appears that the stairway leading from Stevens street was in common use, and that the plaintiff had a right to use it in going to and from the office of her physician. Suit was brought against the defendant, alleging damages in the sum of $5,000. The case was tried by a jury and a verdict rendered for plaintiffs for $2,500, and a judgment rendered for the same, from which judgment an appeal was taken to this court.

The defendant assigns as error the following instructions to the jury, given by the court upon its own motion:

"Furthermore, gentlemen, the plaintiffs claim in this action that the defendant was not only guilty of negligence, by reason of which the plaintiff was damaged, but was guilty of gross negligence, and, in case you find they were guilty of gross negligence, a different rule of damages applies to the case." "'Gross negligence' means a wanton and reckless disregard of the rights of other persons, taken into consideration with the facts in the case; and, in case you find that it was, then, in addition to the actual damages which you may find for plaintiff, you may assess a sum which the law calls 'exemplary damages.' That means a damage to deter others from being wanton and reckless of the rights of others."

Also the following instructions asked by plaintiffs:

" If the jury believe from all the evidence that the agent and employés of defendant, the Spokane Truck and Dray Company, in placing the beams and planks across the well-hole, in plaintiffs' petition mentioned as being in the Eagle block, in the city of Spokane Falls, and in any other way, in the construction and preparation of the appliances for hoisting the safe up and through said well-hole, and, in the hoisting of the same, failed to use such care as the nature of the employment, and the situation and circumstances surrounding the same, required of a prudent person, having had experience and skilled in such or similar work, and that, by reason thereof, said beam and planks, and other appliances, in the attempt to hoist said safe, gave way, or were broken, and fell down through said well-hole, striking plaintiff, Mina Hoefer, breaking her arm, and otherwise injuring her, they should find for plaintiff, assessing the damage, if any, at such sum as they find she has sustained, not exceeding $5,000, the amount claimed in the complaint."

" The jury is instructed that, if they find for plaintiff under the preceding instruction, in assessing the damage, they have a right to consider and allow for the loss of the personal services of plaintiff, Mina Hoefer, to her family; her mental suffering and bodily pain ; the extent of probable duration of the injury; and the prospective loss of service occasioned thereby; also the expense incurred for medicine, nursing, etc., and such reasonable doctor bill as plaintiffs were obligated to pay."

" Should the jury find for plaintiffs under instruction No. 1, and also find that defendant's agents and employés, in constructing the appliances for hoisting said safe, and in hoisting the same, were guilty of gross negligence, that is, exercised so little care as to evince a reckless and willful indifference to the safety of plaintiff, Mina Hoefer, and all others using said entrance and stairway, then they may find for plaintiffs exemplary damages; that is, damages in money by way of punishment, in addition to the damages they may find under instruction No. 2, in no case exceeding in all the amount of $5,000 claimed in the complaint."

The court refused to give the following instruction asked by the defendant, which refusal defendant also assigns as error:

"If you find by the evidence that the injury occurred by defects in the wall, caused by the elements, and such defects were not discovered by ordinary care, in the absence of further negligence on the part of the defendant, the plaintiff cannot recover."

So far as the instruction is concerned that was asked for by defendant and refused by the court, we think it had already been substantially given by the court; and it was not necessary to repeat it in another form of words. The court had already instructed the jury that "if it did not appear by a preponderance of testimony that this injury was occasioned by the negligence of the defendant, that it was their duty to find for the defendant." Courts should not be called upon to particularize by referring to certain portions of the testimony. It is a far safer rule to state the law governing the case in general terms.

It is claimed by the defendant that the language used by the court in the first instruction asked by plaintiffs makes the defendant an actual insurer of the safety of the public, and is therefore erroneous. The statement was "that the defendant was bound to use such care as the nature of the employment and the situation and circumstances surrounding the same required of a prudent person having had experience, and skilled in such or similar work." We are unable to see how this instruction could be materially modified. Undoubtedly the "nature of the employment" must be taken into consideration. If it is an employment which is likely to endanger life or property, certainly a greater degree of care would be required than an employment the careless performance of which would not ordinarily result in injury to person or property. It is plain that "the situation and circumstances surrounding the

employment" must be considered; for, applying the rule to a case of this character, a person in hoisting a heavy weight in an unfrequented place, in no way connected with any thoroughfare or passage-way, would not be held to the same degree of care as he would be if the work were being done in a public thoroughfare, where people had a right to pass, and were actually constantly passing. It certainly cannot be gainsaid that "prudence" should be one of the requisite qualifications of a person engaged in such employment. Nor must his qualifications stop here, when engaged in a business which is liable to injuriously affect the public; for he might be an ordinarily prudent man, and yet, if he had no experience or skill in the particular work in which he is engaged, disastrous results would be liable to follow. Language which is not technical must be construed by its ordinarily accepted meaning, and we do not think the language employed by the court could be so construed as to make the defendant an insurer; and we concur with the counsel for the plaintiffs that it states substantially the same doctrine as the quotation from Shearman & Redfield on Negligence, § 47, by defendant, where they define ordinary care to be "the care usually bestowed upon the matter in hand by persons accustomed to deal with such matters, and having the average prudence of the general class of society to which the person whose conduct is in question belongs."

We next pass to the instruction of the court, both upon its own motion and upon the motion of the plaintiffs, in relation to punitive damages. This is a question which has engaged the earnest attention of courts and authors. A careful investigation of the discussion of this subject by such noted authors as Greenleaf, Sedgwick and Parsons, and also other eminent text-writers, and by numerous courts, shows a wonderful diversity of opinion on this interesting subject. The weight of authority, especially con-

sidering the older cases, seems to be in favor of the doctrine
of punitive damages ; but the opposite doctrine has received
the support and advocacy of many modern writers, and
the judicial sanction of many modern courts; while other
courts have frankly stated their repugnance to the doctrine,
yet considered themselves bound by former decisions in
their respective states to still maintain it, appealing to the
legislature to relieve them from what they believe to be a
pernicious practice.   In this state it is a new question, and
the court approaches its investigation untrammeled by
former decisions, free to accept the reasoning which most
strongly appeals to its judgment, and to adopt the rule
which, in its opinion, will simplify judicial proceedings,
and lead to the least embarrassing complications in the
adminstration of the law, and the determination of rights
thereunder.   And this desired *ultimatum,* we think, will
best be attained by adopting the rule laid down by Mr.
Greenleaf (volume 2, § 253), that "damages are given as a
compensation or satisfaction to the plaintiff for an injury
actually received by him from the defendant.   They should
be precisely commensurate with the injury, neither more
nor less; and this whether it be to his person or estate" —
although it is stoutly maintained by so eminent an author
as Mr. Sedgwick that this definition is too limited, and
that wherever the elements of fraud, malice, gross negli-
gence or oppression "mingle in the controversy, the law,
instead of adhering to the system or even the language of
compensation, adopts a wholly different rule.   It permits
the jury to give what it terms 'punitive,' 'vindictive,' or
'exemplary' damages; in other words, blends together the
interests of society and of the aggrieved individual, and
gives damages not only to recompense the sufferer, but to
punish the offender."   1 Sedg. Dam. p. 38; 7th ed. p. 53.
It seems to us that there are many valid objections to inter-
jecting into a purely civil action the elements of a crimi-

nal trial, intermingling into a sort of a medley or legal jumble two distinct systems of judicial procedure. While the defendant is tried for a crime, and damages awarded on the theory that he has been proven guilty of a crime, many of the time honored rules governing the trial of criminal actions, and of the rights that have been secured to defendants in criminal actions "from the time whereof the memory of man runneth not to the contrary," are absolutely ignored. Under this procedure, the doctrine of presumption of innocence until proven guilty beyond a reasonable doubt finds no lodgment in the charge of the court, but is supplanted by the rule in civil actions of a preponderance of testimony. The fallacy and unfairness of the position is made manifest when it is noted that a person can be convicted of a crime, the penalty for which is unlimited save in the uncertain judgment of the jury, and fined to this unlimited extent for the benefit of an individual who has already been fully compensated in damages on a smaller weight of testimony than he can be in a criminal action proper, brought for the benefit or protection of the state, where the amount of the fine is fixed and limited by law; and, in addition to this, he may be compelled to testify against himself, and is denied the right to meet the witnesses against him face to face under the practice in civil actions of admitting depositions in evidence.

Exclusive of punitive damages, the measure of damages as uniformly adopted by the courts and recognized by the law is exceedingly liberal towards the injured party. There is nothing stinted in the rule of compensation. The party is fully compensated for all the injury done his person or his property, and for all losses which he may sustain by reason of the injury, in addition to recompense for physical pain, if any has been inflicted. But it does not stop here; it enters the domain of feeling, tenderly inquires into his mental sufferings, and pays him for any anguish of mind

that he may have experienced. Indignities received, insults borne, sense of shame or humiliation endured, lacerations of feelings, disfiguration, loss of reputation or social position, loss of honor, impairment of credit, and every actual loss, and some which frequently border on the imaginary, are paid for under the rule of compensatory damages. The plaintiff is made entirely whole. The bond has been paid in full. Surely the public can have no interest in exacting the pound of flesh. Ordinarily the administration of the laws is divided into two distinct jurisdictions, the civil and the criminal, each governed by rules of procedure and by rules governing the admission and weight of testimony different and distinct from the other. The province of the civil court is, as its name indicates, to investigate civil rights. There its jurisdiction ends, or ought to end; while the province of the criminal court is, as its name imports, to investigate and punish crime and restrain its commission. And it is to the criminal and not to the civil jurisdiction that society looks for its protection against criminals. The object of punishment is not to deter the criminal from again perpetrating the crime on the particular individual injured, but for the protection of society at large; and as the state is at the expense of restraining and controlling its criminals, and as fines are imposed for the double purpose of restraining the offender and of re-imbursing the state for its outlay in protecting its citizens from criminals, we are at a loss to know by what process of reasoning, either legal or ethical, the conclusion is reached that a plaintiff in a civil action, under a complaint which only asks for compensation for injuries received, is allowed to appropriate money which is supposed to be paid for the benefit of the state. It is to be presumed that the state has fully protected its own interests, or as fully at least as they could be protected by laws, when it provides for the punishment of crime in its criminal statutes, and fixes the

fine at a sum which it deems commensurate with the crime designated; hence, punitive damages cannot be allowed on the theory that it is for the benefit of society at large, but must logically be allowed on the theory that they are for the sole benefit of the plaintiff, who has already been fully compensated; a theory which is repugnant to every sense of justice.

Again, while jurors should be the judges of the character and weight of testimony, that judgment should be exercised under some rule, and be amenable to some law, so that an abuse of discretion could be ascertained and corrected; but, under the doctrine of punitive damages, where the whole question is left to the unguided judgment of the jury, and where, under the very nature of the doctrine, no measure of damages can be stated, and hence no limits compelled, where there are no special findings provided for, it would not be often that a court would be warranted in interfering with a verdict, if indeed it could do so at all, if the verdict fell within the amount asked as compensatory damages. Take the case at bar for instance, and the court has no way of ascertaining whether the jury found that the plaintiff had actually been damaged to the full amount of $2,500, or whether they found her actual damages to be $500, and assessed the other $2,000 by way of punishment. It seems to us that a practice which leads to so much confusion and uncertainty in the administration of the law, and that is always liable to lead to injustice, the correction of which is impracticable, cannot be too speedily eradicated from our system of jurisprudence. In this connection, we quote approvingly the language of the supreme court of Indiana in *Stewart v. Maddox,* 63 Ind. 51. Says the court: "The doctrine of exemplary or punitive damages rests upon a very uncertain and unstable basis. It is almost equivalent to giving the jury the power to make the law of damages in each case; and in a case where the defendant

is a commanding, popular, influential person, and the plaintiff of the opposite character, and the local and temporary excitement or prejudice of the time happens to be in favor of the defendant, and against the plaintiff, the jury is apt to be reluctant in giving even pecuniary compensation without adding anything by way of exemplary or punitive damages; while, in a case in which the character of the parties and the circumstances are reversed, the jury will be liable to push their power to an unwarranted and unconscionable extent, dangerous to justice and the security of settled rights." Says the court in *Murphy v. Hobbs*, 7 Col. 541 (49 Am. Rep. 366; 5 Pac. Rep. 119): "The reflecting lawyer is naturally curious to account for this 'heresy' or 'deformity,' as it has been termed. Able and searching investigations made by both jurists and writers disclose the following facts concerning it, viz.: That it was entirely unknown to the civil law; that it never obtained a foothold in Scotland; that it finds no real sanction in the writings of Blackstone, Hammond, Comyns, or Rutherford; that it was not recognized in the earlier English cases; that the supreme courts of New Hampshire, Massachusetts, Indiana, Iowa, Nebraska, Michigan and Georgia have rejected it in whole or in part; that of late other states have falteringly retained it because committed so to do; that a few years ago it was correctly said, 'At last accounts the court of queen's bench was still sitting hopelessly involved in the meshes of what Mr. Chief Justice Quain declared to be "utterly inconsistent propositions;"' and that the rule is comparatively modern, resulting in all probability from a misconception of impassioned language and inaccurate expressions used by judges in some of the earlier English cases." And in support of this theory the Colorado court quotes Mr. Justice Foster in *Fay v. Parker*, 53 N. H. 342 (16 Am. Rep. 270), who concludes a discussion of the expression "smart money" as used by Grotius and jurists con-

temporary with that author, in the following language: "It is interesting, as well as instructive, to observe that one hundred and twenty years ago the term 'smart money' was employed in a manner entirely different from the modern signification which it has obtained, being then used as indicating compensation for the smarts of the injured person, and not, as now, money required by way of punishment, and to make the wrong-doer smart." Some courts have held that it was in violation of the constitutional guaranty "that no person should be twice put in jeopardy for the same offense," where the criminal code provided a punishment for the same offense, and some have restricted or limited its abrogation to cases where the act charged to have been committed was made punishable by law; but, without expressing any opinion on the constitutional question, we believe that the doctrine of punitive damages is unsound in principle, and unfair and dangerous in practice, and that the instruction of the court on the subject of punitive damages was erroneous. With this view of the law it is not necessary to examine the further objection urged by defendant, "that this was not a proper case for the application of the doctrine of punitive damages." The judgment is reversed, and the case remanded for a new trial.

ANDERS, C. J., and HOYT, SCOTT, and STILES, JJ., concur.