[No. 8308.　Department One.　December 9, 1909.]

## LILLY CALDWELL, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

CARRIERS—DUTY TO PASSENGERS—INSULTS—QUESTION FOR JURY. Whether the use of the words "such as you" by a railroad conductor was intended to be insulting or disparaging to a passenger who was afflicted with a bodily infirmity is a question for the jury.

SAME—INSTRUCTIONS AS TO DUTY. It is not prejudicial error to instruct that a carrier owes a special duty to a female passenger to protect her from insults, as it owes that duty to all passengers.

DAMAGES—MENTAL SUFFERING—EVIDENCE TO SUSTAIN—INSULTS— WANTONNESS. A passenger cannot recover compensatory damages for mental suffering from an insult on the mere declaration that she has suffered in feelings; but to sustain a recovery for more than nominal damages it must appear from attending circumstances that there was warrant for the mental attitude and wilful or wanton disregard of her rights.

DAMAGES—PERSONAL INDIGNITIES—EXCESSIVE VERDICT—NEW TRIAL. A verdict for one thousand dollars in favor of a crippled passenger, for insults by the conductor, is so excessive as to show passion or prejudice requiring a new trial, where it merely appears that the conductor provided a place for plaintiff and her wheel chair in the express car and required her to ride there when there were seats in the passenger coach in which she was entitled to ride, and that he did not act in a wanton manner or with any wilful intent to heap indignity upon her, and there was no greater degree of wrong or humiliation than embarrassment.

Appeal from a judgment of the superior court for Clarke county, McCredie, J., entered October 26, 1908, upon the verdict of a jury rendered in favor of a passenger for damages by reason of insults by the conductor. Reversed.

*A. L. Miller* and *Geo. T. Reid*, for appellant.

*Frank E. Vaughan*, for respondent.

CHADWICK, J.—Plaintiff is an invalid, being so crippled in her lower limbs that she is unable to walk in an erect posi-

[1] Reported in 105 Pac. 625.

tion.  Usually she propels herself in a wheeled carriage, but when necessary can hitch herself along, while sitting down, by pulling her feet forward with her hands.  On the 12th day of July, in company with others, she went on a picnic excursion to Knapp's Station, about eight or ten miles west of Vancouver, Washington.  In the morning of that day she had endeavored to get on the cars on the opposite side from the platform.  A friend was present but was rendering her no actual assistance.  Being observed by the conductor, he remonstrated, saying in effect that if she had friends they should assist her, and that she should have gone to the other side of the car where men were employed to assist passengers when entering the car.  Plaintiff says the conductor used these words, "to assist such as you."  However, the conductor did unlock the car door opening onto the platform, and allowed her to enter, she refusing his assistance.  When the train arrived at Knapp's, the conductor took her in his arms and, possibly with the assistance of another, put her in her carriage on the platform.  Plaintiff attaches no great importance to the manner in which she was treated in the morning, admitting that the conductor was polite and kind, but she says she thinks his manner was rather gruff when he first found her on the car steps, and that his remark "such as you" was uncalled for.

In the evening, before the train arrived at Knapp's, the conductor prepared a room at the end of the combination mail and express car, which was not then in use excepting only as the conductor used it as an office and as the brakemen used it as a place to keep some of their clothing.  A door opened from this room, facing the platform and the door of the first-class passenger coach.  There were doors also opening on each side, twelve or fourteen feet from the end of the car.  When the train stopped at Knapp's, plaintiff was about to climb up the steps, when she was hailed by the conductor, who ordered her into the room he had prepared for her.  She and her carriage were then lifted to-

gether into the express car by two of her friends and a brakeman. She protested vigorously when told that she must ride in the express car, and it is again asserted by her and some of her friends that the conductor again said, this time in the presence of many other people, "This is the place for such as you," and words to that effect. Some of her friends came into the express car and rode with her. After a short time she got out of her carriage and rode on the floor, there being no chairs in the car. The reason she gives for this is that she was afraid her carriage might roll out of the car, although there is no evidence that it was at all likely. It is further asserted that, although the day was very warm, a fire had been built in the stove. This latter fact is denied by the conductor and others. But whether it be so or not, we are not disposed to attach any importance to it as a circumstance showing malice, which was the evident purpose of the testimony. There is nothing to show that the fire was put there by the conductor or any servant of the company. If there was a fire, with three doors open and the train moving, it is not likely that plaintiff suffered any injury therefrom. From a judgment in the sum of $1,000 in favor of plaintiff, defendant has appealed.

A number of errors are assigned, all but one going to the instructions of the court. It is urged, that the court should not have submitted the question of insult to the jury; that the testimony does not warrant the inference that the conductor intended any insult whatever. While it seems improbable that the conductor, by the use of the words "such as you," etc., meant any insult, or intended to refer in any intemperate way to respondent's infirmity, the effect of his language would depend upon his manner and the manner of his speech. It was clearly a question for the jury. It is to be regretted that a conversation or words from which a jury is called upon to draw a legal conclusion must be repeated by those whose interest may unconsciously drive them to give a tone or color never intended by the first speaker,

15—56 WASH.

and which may result even in injustice to him. But there is no better way, nor is it likely that one will ever be devised. Consequently, when dealing with this class of testimony, courts must take the verdict for the fact.

It is also complained that the court told the jury that a carrier owed an especial duty to a female passenger to protect her from insult. Without committing ourselves to the doctrine that a carrier owes a higher duty to a female passenger than to a male passenger in this respect, we think that the instruction was not prejudicial, for it cannot be denied that a carrier owes such a duty to every passenger.

The final assignment is that the verdict is so excessive as to show prejudice or passion on the part of the jury. A party is entitled to recover for the actual, measurable wrongs sustained, and in addition thereto such damages as result from injury to the feelings; or, as it has been put, compensation for mental suffering. But there must be some ground upon which to base this element. Damages do not flow from the mere declaration of the party that he has suffered in feeling. There must be facts or circumstances showing some warrant for the mental attitude of the one who alleges the wrong, so that in order to warrant a recovery on this account for more than nominal damages the wrong must be attended by circumstances showing a wanton or wilful disregard of the rights of the passenger. In other words, in an action against a company for the wrong of its servant, the conduct of the servant as well as the humiliation suffered by the passenger are facts to be considered in the light of all attending facts and circumstances, as matter in aggravation rather than the basis of the right itself.

"The motive of the wrongdoer is a material consideration, though affecting the question of compensatory damages simply. The reason for this is that if the wrong is committed wilfully, wantonly, or maliciously, it is likely to be more trying or aggravating in its mental effects than if such elements are lacking." 8 Am. & Eng. Ency. Law (2d ed.), p. 661.

On the other hand, the act of the servant may be shown in mitigation of the alleged wrong, whether the resultant damages be allowed as compensation or by way of punishment and example. Hence, where exemplary damages are allowed, the rule is stated thus:

"If the servant, in performing the act in question, was but in good faith attempting to do what he believed to be his duty, though mistakenly, exemplary damages cannot be allowed, though full compensation will be given." 3 Hutchinson, Carriers (3d ed.), § 1443.

If this is the rule where exemplary damages are allowed, it must apply with added force where, as in this state, exemplary damages are not allowed in any case unless under some statute. It does not follow from the duty to award compensation that a jury can assess damages which upon the face of the verdict, considering the whole record, show an evident purpose to punish. There is absolutely nothing in the record to warrant the assumption that the conductor acted in a wanton manner, or with wilful intent to heap any indignity upon respondent. Indeed, in the cold light of the record, stripped of the drama of the trial, the wonder is that the jury returned a verdict for more than nominal damages. One of respondent's own witnesses, a lady who was with her in the car, could extract no greater degree of wrong or humiliation out of the case than embarrassment, an opinion in all probability emphasized by respondent's affliction. A fair reading of the record indicates no more than an honest attempt, possibly clumsily executed, to minister to the comfort of an afflicted person, and this met by a protest gendered of a supersensitive nature. But respondent was received as a passenger. The jury found that there were vacant seats in the passenger coach in which she was entitled to ride. She is therefore entitled to compensation for her actual injuries. We confess our inability to fix this amount on any rational basis, and the verdict being unaccountable on any other theory than that the jury was influenced by passion and

prejudice, or a spirit of vindicativeness aggravated by the helpless condition of the respondent, we have decided to follow the practice adopted in the case of *Olson v. Northern Pac. R. Co.*, 49 Wash. 626, 96 Pac. 150, and remand the case for a new trial, without foreclosing the right of appellant to assert all defenses heretofore urged by it.

RUDKIN, C. J., FULLERTON, MORRIS, and GOSE, JJ., concur.