[No. 23209.   Department One.   January 8, 1932.]

ERMA L. THOMPSON, *Respondent*, v. THOMAS
THOMPSON *et al., Appellants.*[1]

[1]Reported in 6 P. (2d) 617.

*Ryan, Desmond & Ryan,* for appellants.

*Geo. Olson* and *Leo W. Stewart,* for respondent.

BEELER, J.—March, 1929, the plaintiff, Erma L. Thompson, then a *femme sole,* became acquainted with the defendants' son, Waldo Thompson, a minor. After a brief but strenuous courtship they were married on August 25, 1929. She was nineteen and he was twenty years of age. They lived together until March 8, 1930; thereafter they lived apart. On March 9, 1930, she swore to a complaint charging him with abandonment and nonsupport, and a warrant was issued for his arrest under the lazy husband act. This warrant was not served until the time of the trial in the lower court, and no reason appears for the delay. On April 11, 1930, she brought an action against her husband for separate maintenance, but the record does not show what disposition, if any, was made thereof.

On the same day, she brought this action against her father-in-law and mother-in-law to recover damages for the alienation of her husband's affections. The cause was tried to the court and a jury December 3, 1930, resulting in a verdict in her favor in the sum of $7,500. The defendants' motions for judgment *non obstante veredicto,* or, in the alternative, for a new trial, were overruled, and a formal judgment was entered against the defendants, from which they have appealed.

The appellants seasonably interposed motions for a nonsuit, for a directed verdict, and for judgment n. o. v., challenging the legal sufficiency of the evidence. The appellants contend that the court erred in overruling these several motions. As to these assignments, we need but say that the evidence, if believed, as the triers of the facts evidently did, was sufficient to support the verdict and judgment.

The appellants next contend that the trial court erred in the giving and in refusing to give certain instructions, but we find it unnecessary to analyze and discuss them separately. The instructions as given were comprehensive, and, in our opinion, defined the law applicable to the case with fairness to both parties; while those that were refused consisted in part of duplications of what in effect were given.

The appellants next contend that the verdict is so excessive and exorbitant as to indicate passion and prejudice on the part of the jury, and that the court erred in overruling their motion for a new trial. This assignment presents a more serious question. The facts applicable thereto may be briefly summarized:

A few weeks after the respondent and Waldo became acquainted, and up to the time of their marriage, she visited Waldo's parents once a week and frequently dined with them, and as to their attitude towards her during that period, she testified: "His parents showed a fondness for me, and we got along just splendidly." Those weekly visits continued after the marriage, and up to practically the time of their separation. She was employed in a restaurant or coffee shop during their courtship. Following the marriage, they resided in a hotel at Seattle for a few days; and then moved to an apartment near the business section of the city, where they resided for about two weeks, during which time Waldo contributed nothing towards her support—but instead, she supported him. She testified: "I paid for the apartment when we were first married. I was working. I paid it."

On September 10, the appellants turned over to the respondent and Waldo a small meat shop, and a truck used in connection therewith, with the hope that he would be able to support his wife. Their living quarters were above the meat shop. Waldo operated the

shop from September 10 to November 6, 1929, and about midnight on the latter date, without notice to the appellants, he, in company with the respondent, drove appellants' truck to a point near the waterfront and there abandoned it, taking passage on a boat for Los Angeles. A few days later, the appellants, through the aid of the Seattle police department, regained possession of their truck.

Upon Waldo's departure, the respondent took up her former employment. About November 22, Waldo returned to Seattle and again lived with the respondent. From that time until the following January, he was unemployed and contributed nothing towards her support. She testified: "When Waldo returned from California, he had no money and I paid the room rent." On April 19, 1930, Waldo left for Alaska, and while there sustained an injury and telegraphed to his father for money, which the latter refused to send. Waldo returned to Seattle about July 15, where he resided until the time of the trial.

At the time Waldo went to California, he took with him moneys he had collected in the operation of the shop, and left unpaid bills amounting to the sum of $340. These bills, together with certain other obligations incurred by the respondent for merchandise which she purchased after her marriage to Waldo, including bills incurred at the time her child was born, were paid by the appellants.

The evidence as a whole shows that, excepting the short period of time Waldo had charge of the meat shop, and a few weeks in January, 1930, while employed at the Aircraft Plywood Company, at Seattle, he utterly failed and neglected to provide *any* support for the respondent. On the contrary, she not only supported herself, but also her shiftless, indolent, irresponsible and lazy young husband. Apparently, he was

totally lacking in understanding the responsibilities and duties of a husband and father. He gave neither thought nor concern for his offspring. His utter lack of gratitude and his instability are well illustrated by the fact that he abandoned his father's truck at midnight on a public thoroughfare at the time he sailed for Los Angeles. The truth is that Waldo had caused his parents no small amount of grief and trouble.

When we take into consideration the fact that Waldo contributed *very* little towards the support of his wife during the time they lived together; the further fact that he gave her *no* support subsequent to March 8, 1930, but shifted the burden entirely onto her; the further fact that he gave no concern to the child; the further fact that he frequented public dance halls and, at least at times, drank too freely and possibly to excess—when we consider these facts, together with all the other circumstances of the case, we are led to conclude that the verdict of the jury was the result of partiality, passion and prejudice.

The value, if any, of Waldo's voluntary support of the respondent is all but negligible, and the verdict so exorbitant and excessive as to indicate a desire on the part of the jury to punish the appellants.

"It does not follow from the duty to award compensation that a jury can assess damages which upon the face of the verdict, considering the whole record, show an evident purpose to punish." *Caldwell v. Northern Pac. R. Co.*, 56 Wash. 223, 105 Pac. 625.

The authorities upon this subject, both of this and foreign jurisdictions, are reviewed in the case of *Phillips v. Thomas*, 70 Wash. 533, 127 Pac. 97, 42 L. R. A. (N. S.) 582, Ann. Cas. 1914B 800, in which we pointed out that, while courts are reluctant to reduce verdicts in actions of this character, nevertheless a verdict should not be permitted to stand where the

facts and circumstances show it to be the result of passion and prejudice. The court, speaking through Judge Ellis, said:

"Under all of the circumstances disclosed by the record, we are constrained to hold that the verdict is so excessive as to raise a presumption of passion and prejudice, and that, even as reduced by the trial court, it was grossly excessive. While we have in many cases, where a verdict has been found excessive, permitted the plaintiff to remit a portion of the recovery rather than grant a new trial unconditionally, we have in other cases, where the amount awarded was so excessive and unreasonable as to be unaccountable except upon the theory that the jury was influenced by passion, prejudice, or a spirit of vindictiveness, refused to deprive the defendant of a new trial upon the whole case. [Citing cases.]

"The courts have often expressed a reluctance to reduce even excessive verdicts in actions for alienation of affections, because of the lack of any rational basis upon which to fix the proper amount. But the same reason does not apply to the granting of a new trial where the verdict is palpably unreasonable."

The cause is remanded, with directions to grant the appellants' motion for a new trial unless the respondent, within ten days after the remittitur shall have been filed, elects to accept the sum of $2,500, including costs, in full satisfaction of the judgment.

TOLMAN, C. J., MITCHELL, HERMAN, and PARKER, JJ., concur.