[No. 23495. Department Two. April 26, 1932.]

PUGET SOUND LUMBER COMPANY, *Respondent,* v.
MECHANICS' & TRADERS' INSURANCE
COMPANY *et al., Appellants.*[1]

[1]Reported in 10 P. (2d) 568.

*Fred G. Clarke* and *Neal & Bonneville,* for appellants.

*Williamson, Freeman & Broenkow,* for respondent.

BEALS, J.—Puget Sound Lumber Company, a corporation, the plaintiff in this action, has for several years owned and operated a sawmill in the city of Tacoma. Sometime prior to May 7, 1930, on which date the mill plant was destroyed by fire, plaintiff had taken out policies of use and occupancy insurance in the aggregate sum of $88,300. Of this gross amount, the five defendant insurance companies had written policies aggregating $11,000, and, the matter of defendants' liability upon these policies being disputed, plaintiff instituted actions against these defendants based upon their policies. The five actions were consolidated for trial in the superior court, and, being tried to a jury, resulted in verdicts in plaintiff's favor as follows:

| | |
|---|---|
| Mechanics' & Traders' Insurance Company. | $732.63 |
| The Svea Fire & Life Insurance Company.. | 1,465.25 |
| The Carolina Insurance Company of Wilmington, N. C.......................... | 1,172.20 |
| Caledonian Insurance Company of Edinburgh, Scotland ....................... | 1,318.73 |
| Victory Insurance Company of Philadelphia, Pennsylvania ................... | 1,758.30 |

$6,447.11

From judgment on these verdicts, the defendants appeal, and the consolidation of the actions has been maintained in this court.

Appellants admit that their respective policies were in force at the date of the fire, and that the fire was of sufficient magnitude to totally suspend the operations of respondent's plant for a considerable period. Respondent claimed against the aggregate amount of its use and occupancy insurance a total loss of $81,470.63, the claim being for loss under subdivision II, hereinafter quoted, for fixed charges and expenses which must necessarily continue during a total or partial

suspension of business, to the extent only that such fixed charges and expenses would have been earned had no fire occurred. Respondent advanced no claim under the policies for net profits lost because of the fire, the sole issue to be tried being whether or not respondent, during the period of suspension of business because of the fire, would have earned any part of its fixed charges and expenses had the fire not occurred and business continued as usual, and, if so, how much.

The provisions of the insurance policies, in so far as they are material, read as follows:

"(1) The conditions of this contract are that if the building(s) and equipment only, situate on premises owned, leased and/or occupied by the assured at Tacoma, Pierce county, Washington, Sanborn Map Sheet 26, Block 482, and occupied as Saw Mill Plant and/or machinery and/or equipment . . . (Insert here 'and/or raw stock' if liability due to damage to or destruction of raw stock is to be included) contained therein, be destroyed or damaged by fire occurring during the term of this policy so as to necessitate a total or partial suspension of business, this Company shall be liable under this policy for the actual loss sustained consisting of:

"I. Net profits on the business which is thereby prevented;

"II. Such fixed charges and expenses as must necessarily continue during a total or partial suspension of business to the extent only that such fixed charges and expenses would have been earned had no fire occurred;

"III. Such expenses as are necessarily incurred for the purpose of reducing the loss under this policy; for not exceeding such length of time, commencing with the date of the fire and not limited by the date of expiration of this policy, as shall be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of said building (s) and machinery and equipment . . . (Insert here 'and

raw stock' if liability due to damage to or destruction of raw stock is included) as may be destroyed or damaged, subject to the following conditions and limits, to-wit:

"(2) TOTAL SUSPENSION CLAUSE: The per diem liability under this policy during the time of total suspension of business of all the properties described herein shall be limited to the ACTUAL LOSS SUSTAINED, not exceeding 1/300 of the amount of this policy for each business day of such suspension, except that in the case of business being operated on Sundays and/or holidays, in which event the said per diem liability shall not exceed 1/365 of the amount of this policy for each business day of such suspension, due consideration in either case being given to the experience of the business before the fire and the probable experience thereafter."

Appellants contend that the trial court erred in overruling their motion for judgment notwithstanding the verdict and in denying their motion for a new trial; in submitting to the jury certain items to be considered in computing the amount of recovery in case of a finding in respondent's favor; in admitting in evidence certain exhibits offered by respondent; and in giving to the jury an instruction to which appellants excepted.

In support of their first assignment of error, appellants contend that it should be held, as matter of law, that the evidence is insufficient to support a finding that, during the period of reconstruction, respondent would have earned any part of its fixed charges and expenses within the provisions of the policies sued upon, and that the trial court should have granted appellants' motion for judgment in their favor notwithstanding the verdict and dismissed the actions.

It must be remembered that this is not an action upon the usual policy of fire insurance. It is true that the loss for which recovery is sought was occasioned

by a fire, but the policies of insurance cover only earnings which might have accrued to the insured had the operation of its plant been uninterrupted by such a calamity, no tangible property being covered. Such policies as are here in question constitute a new branch of insurance, and we find few authorities either in the textbooks or the decided cases which are of assistance in deciding the questions presented in this action. We agree with appellants in their contention that, in determining whether or not any recovery shall be had upon the policies, "due consideration" must be given "to the experience of the business before the fire and the probable experience thereafter," as provided in paragraph (2) above quoted. *Hutchings v. Caledonian Ins. Co.,* 52 Fed. (2d) 744.

Appellants contend that the policies here in question were based upon the customary methods of accounting established and followed by the insured over a considerable period of time preceding the fire, and that these methods of accounting became a part of the contract of insurance and, in so far as applicable, are controlling in determining the liability of appellants.

It is undoubtedly true that, in an action upon such a policy, the trier of the facts is entitled to consider the methods of accounting maintained by the insured prior to the loss, but we cannot agree with appellants that any particular system of accounting is controlling in determining questions of liability under the policies. Appellants wrote the policies in suit for a valuable consideration. The policies do not themselves refer to any particular system of bookkeeping or accounting, nor do they purport to refer to any particular classification to which certain accounts in connection with the business shall be allocated.

In such an action as this, the question is not, in what account did the insured place certain items of receipt or disbursement, of depreciation, or of profit or loss, for the purpose of computing any income tax which might be due or for the purpose of making a statement for its banker; but rather, to what account should the respective items be allocated for the purpose of determining liability, if any, upon the policies sued upon. For the purposes of making an annual statement to its stockholders, it might be entirely immaterial in which account a certain item was placed, while for the purpose of establishing liability in this action the same matter might become of considerable importance.

We find in connection with the matter now under discussion no elements either of contract or estoppel, and we are satisfied that, in determining the rights of the parties in this proceeding, the question to be decided is, where do the different items of account, as the same affect the issues of this case, properly belong, not, where were they placed by respondent pursuant to the system of accounting which it followed prior to the fire.

Respondent does not claim that, during the time covered by the reconstruction period, if its business had been maintained without any interruption, it would have earned any net profits. Examination of the record satisfies us, however, that the same contains testimony sufficient to support a finding that respondent, over the period of months the plant was idle, had its business continued as usual, would have earned some portion of its fixed charges and expenses, and that the trial court, therefore, did not err in overruling appellants' motion for judgment notwithstanding the verdict.

■ Appellants also assign error upon the denial by the trial court of their motion to withdraw from the consideration of the jury all testimony as to association and club dues which respondent had for years prior to the fire paid for certain of its officers, together with certain appraisal and accountants' fees, appellants contending that these matters should not have been considered by the jury in determining appellants' liability, if any, under the policies.

Respondent, for some time prior to the fire, had paid club and association dues for certain of its officers and employees. The value of maintaining such contacts and associations for its officers is manifest, and it does not appear that the dues so paid were excessive or such as respondent was not justified in paying, under principles of sound business policy. This being true, it cannot be held that, immediately upon the occurrence of the fire, these club and association memberships should have been dropped, possibly to be later resumed at greater expense and at the cost of time, money and annoyance. It would have been easy for appellants to have eliminated such items by reference thereto in their policies. This not having been done, we conclude that the particular items covered by the testimony herein were properly included in computing appellants' liability, if any.

■ Appellants complain of the admission of testimony on behalf of respondent concerning accountants' fees and appraisal expense in connection with matters which appellants argue resulted from the fire loss. In the absence of some clause in the policies providing for the payment of such expense, we find no authority for charging against the insurance company expenses in connection with making proofs of loss.

■ Appellants also complain of evidence introduced by respondent showing the maintenance by it of

a branch office in New York, and fixed expenses in connection therewith. Appellants' objection goes rather to the weight of the testimony than its admissibility. All that need be said concerning this matter is that, if respondent had maintained the office for some time prior to the fire and had paid fixed items of expense in connection therewith, we see no reason why such expense should not be a proper charge against appellants for such period as the New York office was, by reason of the fire, prevented from performing its functions.

■ Appellants assign error upon the admission in evidence, over their objection, of three exhibits consisting of brief tabulations, prepared by respondent in accordance with its theory of the case. These exhibits were used apparently in connection with and in explanation of respondent's theories concerning three other compilations of a generally similar nature taken from respondent's very voluminous books of account covering the period of its operations for a considerable time preceding the fire. The exhibits complained of contain no testimony, but show different amounts with descriptive text, allocated in accordance with respondent's contentions as to the proper manner of computing its profit and loss, having reference to its claims in this action. Such evidence is generally inadmissible, but, under the circumstances shown, and upon the record as made, we find no reversible error in the admission of these tabulations.

■ Appellants next assign error upon the giving of an instruction, to which they preserved an exception. It is true that the instruction complained of is long and complicated, but so were the issues presented to the jury for determination. Respondent sued for the full face value of the policies written by the respec-

tive appellants, and the instruction complained of was within the issues as framed by the pleadings.

In view of the fact that a new trial of the action must be had because of insufficiency of the evidence to support the verdicts rendered, we cannot at this time undertake to definitely define the limits of a permitted recovery, which must, of course, be based upon evidence other than that contained in the record before us. It was certainly the duty of the court to define the limits of any verdicts which the jury might render in respondent's favor, and an instruction upon this matter was necessary. No error is assigned upon the failure of the trial court to give any requested instruction along the line of the one of which appellants complain, and, under all the circumstances, we cannot hold that appellants' exceptions to the instruction referred to were well taken.

■ We shall now consider the error assigned by appellants upon the overruling by the trial court of their motion for a new trial. This motion was based upon all of the statutory grounds, including "excessive damages appearing to have been given under the influence of passion or prejudice" and "error in assessment of the amount of recovery because the same is too large." As respondent makes no claim for recovery based upon the loss of any net profits which it would have earned had the fire not occurred, that element is without the issues of fact which were submitted to the jury.

For some time prior to the fire, respondent's business had been conducted at a loss (respondent admitting a book loss of over $17,000 during the first three months of 1930), and it is as certain as anything can be that the business would not have earned any net profit during the period of fourteen months follow-

ing April, 1930, had no conflagration occurred. Respondent earnestly contends, however, that, during this period, it would have earned a large amount of its overhead expense, a larger proportion thereof than it had earned during the period immediately preceding the fire, and that it is entitled to recover judgment herein against appellants in an amount equal to a considerable proportion of such overhead, bearing in mind at all times that appellants are liable only for their proportionate part of the total loss, if any, suffered by respondent for which it is entitled to recover judgment under its policies of use and occupancy insurance.

It is clear that, by the policies sued upon, appellants did not undertake to insure respondent against loss on account of its fixed charges and expenses, save in so far as respondent would have earned some portion thereof by the operation of its business. *Goetz v. Hartford Fire Ins. Co.*, 193 Wis. 638, 215 N. W. 440. It is also clear that, in determining liability under the policies in this connection, due consideration must be "given to the experience of the business before the fire and the probable experience thereafter." The experience of the business before the fire was shown. The probable experience of the business during the succeeding months was, of course, largely matter of speculation.

Respondent's evidence indicated that, during the first four months of 1930, respondent earned approximately $800 per month of its overhead, which expense respondent contends during the year 1929 had amounted to over $7,500 a month. Respondent also introduced testimony to the effect that proper allocation of expenses incurred by way of replacements and betterments demonstrated that the actual overhead

earned during the first four months of 1930 was considerably in excess of the amount indicated. Of course, many elements entered into this matter, including the fact that the plant was shut down during a portion of the month of April just prior to the fire.

The estimates of the different witnesses who testified as to the length of time which would be required to rehabilitate the plant vary greatly, but the maximum period estimated seems to be fourteen months. In our opinion, the weight of the evidence indicated that a considerably shorter time than fourteen months would have been sufficient. This, of course, was for the jury to determine. Considering for a moment only the past experience of the business, and disregarding the other element referred to in the policies, the evidence clearly indicates that only a maximum sum very much less than the recovery allowed by the jury could have been earned by respondent and is chargeable against its use and occupancy insurance.

Respondent claimed compensation under these policies in an amount in excess of $80,000, and the appellants herein, having written policies aggregating $11,000, were liable for approximately one-eighth of any amount justly due respondent. The judgments rendered herein, aggregating in amount over $6,400, indicate that the jury found that respondent would have earned during the reconstruction period, had its operation continued without interruption, over $50,000 of overhead for which the writers of respondent's use and occupancy insurance policies were liable.

Respondent, while admitting its heavy operation losses during the sixteen months preceding the fire, introduced considerable testimony which tended to prove that, during the succeeding twelve or fourteen months, it would have very materially increased its

earnings and that its "probable experience" after the fire entitled it to a much larger recovery in this action than it could claim based upon "the experience of the business before the fire." Respondent was entitled to introduce evidence tending to prove that its business, after April, 1930, would have been more profitable. Within the limits defined by law, the weight of such evidence would, of course, be for the jury to determine.

We have carefully examined the evidence introduced on behalf of respondent, and conclude that the verdicts rendered find no reasonable support therein, and are so excessive as to impel us to the conclusion that the same were rendered under the influence of passion or prejudice. Giving to respondent's testimony as to its probable experience during the months covered by the reconstruction period all the weight which it can possibly bear, in our opinion it still falls far short, due consideration "being given to the experience of the business before the fire," of furnishing adequate support for the verdicts rendered.

It may be conceded that the questions of fact herein to be adjudicated cannot be determined with exactitude, and that considerable latitude must be allowed to the trier of the facts in estimating the situation and in reaching a just result. Any recovery under respondent's policies, however, must have some reasonable basis in the evidence, and we conclude that the judgments herein lack such support.

In many cases where this court has been of the opinion that the verdict complained of was too large, an order has been made giving the prevailing party the option of accepting judgment for a lesser amount or standing a new trial. We are of the opinion that this case, however, falls rather within the rule laid

down in *Phillips v. Thomas,* 70 Wash. 533, 127 Pac. 97, 42 L. R. A. (N. S.) 582, Ann. Cas. 1914B 800, in which, referring to an excessive verdict, this court said:

"Under all of the circumstances disclosed by the record, we are constrained to hold that the verdict was so excessive as to raise a presumption of passion and prejudice, and that, even as reduced by the trial court, it was grossly excessive. While we have in many cases, where a verdict has been found excessive, permitted the plaintiff to remit a portion of the recovery rather than grant a new trial unconditionally, we have in other cases, where the amount awarded was so excessive and unreasonable as to be unaccountable except upon the theory that the jury was influenced by passion, prejudice, or a spirit of vindictiveness, refused to deprive the defendant of a new trial upon the whole case. *Olson v. Northern Pac. R. Co.,* 49 Wash. 626, 96 Pac. 150, 18 L. R. A. (N. S.) 209; *Caldwell v. Northern Pac. R. Co.,* 56 Wash. 223, 105 Pac. 625."

In the later case of *Kusah v. McCorkle,* 100 Wash. 318, 170 Pac. 1023, the rule was recognized and a new trial granted on the ground of an excessive verdict, this court holding that passion and prejudice on the part of the jury were necessarily inferred from the verdict rendered and the vagaries of the jury indicated by matters preliminary thereto.

In considering a somewhat similar problem, Judge Glenn, of the United States district court for the eastern district of South Carolina, in his opinion rendered in the case of *Hutchings v. Caledonian Ins. Co.,* 52 Fed. (2d) 744, said:

"Many arguments as to the elements which should be taken into consideration in fixing the exact amount to be allowed as the recovery are stressed by plaintiffs and defendant alike. Many of these arguments are in the nature of cross-currents, and would lead us into the realm of speculation and sophistry. We are faced

60

here with the practical matter of doing justice between the parties and not with a problem in sophistry.''

Of course, in the case cited, the learned judge was sitting as trier of the facts, but his language is applicable to the situation here presented.

In this connection, we also give due consideration to the fact that the trial court denied appellants' motion for a new trial.

The judgments appealed from are accordingly reversed, with instructions to the trial court to grant new trials.

TOLMAN, C. J., HOLCOMB, MILLARD, and MAIN, JJ., concur.

[1]Reported in 10 P. (2d) 566.