[No. 31910. *En Banc.* July 31, 1952.]

ERNEST A. ANDERSON, *Respondent,* v. JOHN T. DALTON, *Appellant.*[1]

'Reported in 246 P. (2d) 853.

*Tracy E. Griffin* and *Robert C. Bibb,* for appellant.

*P. R. McIntosh* and *W. S. Lewis,* for respondent.

HILL, J.—This is an action for malicious prosecution.

In the latter part of March, 1947, the license of a tavern owned by Ernest A. Anderson was revoked by the Washington state liquor control board. Anderson subsequently consulted the defendant, John T. Dalton, a lawyer who had had considerable experience representing tavern owners before that board. In a statement made under oath August 2, 1948, before a subcommittee of the legislative council of the state of Washington, Anderson said that Dalton told him, " 'Well, it will take $2000.00 for the Liquor Board and fifteen hundred for my attorney's fees and I'll guarantee your license back.' " (On the same occasion, Anderson also testified that two inspectors employed by the state liquor control board had demanded bribes of him.)

The following day, Dalton complained to a deputy prosecuting attorney that Anderson's testimony regarding him was false. The deputy prosecuting attorney then drew a complaint against Anderson, charging him with the crime of perjury in the first degree, and Dalton signed it. Anderson was arrested August 3rd. There is no evidence as to how long he was detained or whether he was at any time placed in jail.

The hearing on the charge was set for August 13, 1948, and was twice continued, once at Anderson's request, until September 14, 1948, when the complaint was dismissed for want of prosecution. It appears that the prosecuting attorney had concluded that the facts alleged in the complaint constituted second- rather than first-degree perjury. Dalton did not know that the charge had been dismissed until he read it in a newspaper.

Anderson was thereafter tried and convicted of second-degree perjury based upon his statements before the sub-committee of the legislative council that two liquor board inspectors had demanded bribes of him. He was subsequently pardoned.

Anderson commenced the present action for damages in the amount of ten thousand dollars for malicious prosecution, based upon Dalton's signing of the first-degree perjury complaint and its subsequent dismissal. The defense was that Anderson had in fact committed perjury and that there was probable cause for signing the complaint against him. The pivotal question then became whether or not Dalton had made the statement which Anderson attributed to him, *i.e.,* " 'Well, it will take $2000.00 for the Liquor Board and fifteen hundred for my attorney's fees and I'll guarantee your license back.' " If so, Anderson did not commit perjury and Dalton was not justified in making the complaint against him which resulted in the charge of first-degree perjury; if not, Anderson did perjure himself and Dalton's complaint to the prosecuting attorney was justified.

The jury, apparently believing Anderson rather than Dalton, brought in a verdict for seventy-five hundred dollars. The trial judge entered an order stating:

"2. That defendant's [appellant's] motion for new trial is granted for the reason that the damages awarded by the jury were so excessive as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice, and allowing the verdict of $7,500 to stand would not be substantial justice to defendant: Except

"3. If the plaintiff [respondent] shall consent to reduction of the said verdict from the sum of $7500.00 to $2500.00 then judgment in the sum of $2500.00 in favor of plaintiff shall be entered and the new trial shall not be allowed."

Anderson accepted the reduction, and a judgment was entered for twenty-five hundred dollars. Dalton appeals and, as one assignment of error, urges that, instead of reducing the verdict from seventy-five to twenty-five hundred dollars, the trial court should have granted him a new trial on the ground that the verdict was the result of passion or

prejudice, that being one of the statutory grounds for granting a new trial. RCW 4.76.020, 4.76.030; *cf.* Rem. Rev. Stat. (Sup.), §§ 399, 399-1.

■ Anderson, the respondent, asks on this appeal that the seventy-five-hundred-dollar verdict be reinstated and that he be given judgment for that amount. He has a right to make such a request without the formality of cross-appeal. RCW 4.76.030; *cf.* Rem. Rev. Stat. (Sup.), § 399-1.

The only evidence as to damages consisted of the following testimony by Anderson:

"Q. What were your feelings on this matter, about being arrested on this warrant there when you were at the— A. (interposing) I was very, very upset about it, because what I had testified was the truth. Q. What effect did it have on your mental situation? A. It had quite an effect on me mentally. I had numerous 'phone calls. I was pulled off my job as a bartender—as the manager at $85 a week, and was unable to secure employment for a month and a half. I was only on that job a few days and pulled off. Q. What was the reason for being pulled off? A. They wouldn't give any reason. The Union is what told me, the Bartender's Union, some former officers of the Bartender's Union."

There was no evidence as to publicity given to his arrest on the first-degree perjury charge, although he testified that there were a number of newspaper articles with reference to his conviction on the second-degree perjury charge.

It was conceded that, in addition to his conviction on the second-degree perjury charge, Anderson, who was forty-six years of age at the time of the trial, had been convicted in 1926, in Spokane, of attempted petty larceny and, in 1932, of possession of liquor with intent to sell.

■■ We are aware that there is a statutory presumption that the amount of damages awarded by the verdict of the jury is correct. RCW 4.76.030; *cf.* Rem. Rev. Stat. (Sup.), § 399-1. And we are in any event reluctant to interfere with the conclusion of a jury, when fairly made, as to the amount of damages a litigant has sustained, as the determination of damages is primarily a jury function. *Kellerher v. Porter,* 29 Wn. (2d) 650, 189 P. (2d) 223 (1948).

■ This court early committed itself to the view that the doctrine of exemplary, or punitive, damages is unsound in principle, and that such damages cannot be recovered except when explicitly allowed by statute. We have so held from *Spokane Truck & Dray Co. v. Hoefer,* 2 Wash. 45, 25 Pac. 1072, 26 Am. St. 842, 11 L. R. A. 689 (1891), to *Olwell v. Nye & Nissen Co.,* 26 Wn. (2d) 282, 173 P. (2d) 652, 169 A. L. R. 139 (1946).

The verdict in the present case seemed to the trial judge to be three times as much as could be justified by the evidence, and even as reduced by him (from seventy-five to twenty-five hundred dollars, or 66.67%) it seems to a majority of this court to be excessive.

Although the distinction has not always been clearly recognized, we have two lines of cases dealing with the problem of excessive damages:

A. *Those cases in which damages have been regarded as excessive but not necessarily involving passion or prejudice.* In *Scobba v. Seattle,* 31 Wn. (2d) 685, 198 P. (2d) 805 (1948), by giving the prevailing party the option of accepting a smaller amount or submitting to a new trial, this court, sitting *En Banc,* upheld the inherent power of trial courts to grant relief where the verdict contained the injustice of an award of excessive damages, even though there was no passion or prejudice. In that case, we said:

"The trial court, may, therefore, under its inherent power, and in the exercise of its discretion, relieve a party where an injustice has been done in the awarding of an excessive verdict, by either granting a new trial or, in the alternative, by giving the prevailing party the option to accept a smaller amount or submit to a new trial."

In the absence of passion or prejudice, however, there would seem to be no logical basis for granting a new trial unconditionally on the ground that a judgment is excessive, and we find no case in which we have granted a new trial unconditionally under such circumstances.

B. *Those cases in which damages have been regarded as excessive and as having been given under the influence of passion or prejudice.* From 1854 to 1933, "Excessive dam-

ages, appearing to have been given under the influence of passion or prejudice" constituted one of the statutory grounds for a new trial. Laws of 1854, "AN ACT TO REGULATE THE PRACTICE AND PROCEEDINGS IN CIVIL ACTIONS," chapter XX, § 216 (p. 170); see, also, Rem. Rev. Stat., § 399. In 1933, the statute was amended so that, to be a ground for a new trial, damages must be so excessive "as unmistakably to indicate that the verdict must have been the result of passion or prejudice." RCW 4.76.020; cf. Rem. Rev. Stat. (Sup.), § 399.

For the first time in 1933 (RCW 4.76.030; cf. Rem. Rev. Stat. (Sup.), § 399-1) the courts were given statutory authority for the granting of alternative new trials in cases involving passion or prejudice, that is, authority for a new trial unless the prevailing party consents to a reduction of the verdict. But even before the 1933 enactment, we had made it clear in many cases that, where it could be said that the amount of the verdict evidenced passion or prejudice, two remedies were available, (1) a new trial or (2) an alternative new trial, the latter giving the prevailing party the option of remitting a portion of the amount of the verdict or submitting to a new trial.

In most cases, trial courts and this court have applied the latter remedy, although we have not hesitated to grant a new trial unconditionally when we felt that circumstances rendered it likely that the passion or prejudice may not have been confined to the issue of damages but may have so permeated the deliberations of the jury as to render it unjust to hold a litigant foreclosed by any of the jury's findings. *Olson v. Northern Pac. R. Co.*, 49 Wash. 626, 96 Pac. 150 (1908); *Caldwell v. Northern Pac. R. Co.*, 56 Wash. 223, 105 Pac. 625 (1909); *Phillips v. Thomas*, 70 Wash. 533, 127 Pac. 97, 42 L. R. A. (N.S.) 582, Ann. Cas. 1914B 800 (1912); *De Phillips v. Neslin*, 155 Wash. 147, 283 Pac. 691 (1930); *Puget Sound Lbr. Co. v. Mechanics' & Traders' Ins. Co.*, 168 Wash. 46, 10 P. (2d) 568 (1932); *Kellerher v. Porter, supra.* See, also, *Davis v. Tacoma R. & Power Co.*, 35 Wash. 203, 77 Pac. 209 (1904); *Roberts v. Pacific Tel.*

& *Tel. Co.*, 93 Wash. 274, 160 Pac. 965 (1916); and *Kusah v. McCorkle*, 100 Wash. 318, 170 Pac. 1023 (1918).

In more than three-score cases, we have affirmed or ourselves made conditional reductions amounting to fifty per cent of the verdict. We have not, in our consideration of the present case, analyzed those cases to determine whether they fall in Class A (excessive verdicts without reference to passion or prejudice) or Class B (excessive verdicts which indicate passion or prejudice on the part of the juries).

In eleven cases, we have required or upheld the requirement that more than fifty per cent of the verdict be remitted. In our opinions in nine of these, we made no reference to passion or prejudice, and they probably belong in Class A. *Mitchell v. Tacoma R. & Motor Co.*, 13 Wash. 560, 43 Pac. 528 (1896): action for personal injuries; damages reduced from thirty thousand to twelve thousand dollars, or 60%. *Pate v. Columbia & Puget Sound R. Co.*, 52 Wash. 166, 100 Pac. 324 (1909): action for personal injuries; damages reduced from four thousand to one thousand dollars, or 75%. *Ohrstrom v. Tacoma*, 57 Wash. 121, 106 Pac. 629 (1910): wrongful death case; damages reduced from twenty-seven thousand to eighteen thousand dollars by the trial court and to twelve thousand dollars by the supreme court, or 55.55%. *Mathis v. Western Furniture Mfg. Co.*, 72 Wash. 206, 130 Pac. 94 (1913): action for personal injuries; damages of $3,250 reduced to one thousand dollars, or 69.23%. *Tweedy v. Inland Brewing & Malting Co.*, 75 Wash. 25, 134 Pac. 468 (1913): action for personal injuries; damages reduced from four thousand to fifteen hundred dollars, or 62.5%. *St. Germain v. Potlatch Lbr. Co.*, 76 Wash. 102, 135 Pac. 804 (1913): wrongful death case; damages of six thousand dollars reduced to two thousand dollars, or 66.67%. *Thompson v. Fiorito*, 167 Wash. 495, 9 P. (2d) 789, 12 P. (2d) 1119 (1932): wrongful death case; damages reduced from twenty-five thousand to twelve thousand dollars, or 52%. *Jorgensen v. Oregon-Washington R. & Nav. Co.*, 176 Wash. 399, 29 P. (2d) 744, 33 P. (2d) 898 (1934): action for personal injuries; damages reduced from fifteen thousand to fifty-nine hundred dollars, or 60.67%. *Scobba*

*v. Seattle, supra*: action for personal injuries; damages reduced from ten thousand to four thousand dollars, or 60%.

In only two cases involving reductions of more than fifty per cent in verdicts have we said that there was passion or prejudice. *Hemenway v. Washington Water Power Co.*, 49 Wash. 338, 95 Pac. 269 (1908): action for personal injuries; damages reduced from seventy-five hundred to five thousand dollars by the trial court and to twenty-five hundred dollars by the supreme court, or 66.67%. *Gray v. Wilson*, 34 Wn. (2d) 524, 208 P. (2d) 1171 (1949): action for personal injuries; damages reduced from $12,132.50 to $4,170, or 65.63%. In those two cases, we found, in effect, that the passion and prejudice had been isolated to the issue of damages, and that a reduction in the amount of damages was the appropriate remedy.

We cannot so find in the present case. Minds which could, on the meager evidence of damages in this record, award a verdict of seventy-five hundred dollars, must have been so affected by passion or prejudice as to make their finding on any issue suspect. Under such circumstances, as we said in *Olson v. Northern Pac. R. Co.*, *supra*, "it would be unjust to hold a litigant foreclosed by any of the findings." In *Phillips v. Thomas*, *supra*, we used the following language, which seems peculiarly apropos:

"Under all of the circumstances disclosed by the record, we are constrained to hold that the verdict was so excessive as to raise a presumption of passion and prejudice, and that, even as reduced by the trial court, it was grossly excessive. While we have in many cases, where a verdict has been found excessive, permitted the plaintiff to remit a portion of the recovery rather than grant a new trial unconditionally, we have in other cases, where the amount awarded was so excessive and unreasonable as to be unaccountable except upon the theory that the jury was influenced by passion, prejudice, or a spirit of vindictiveness, refused to deprive the defendant of a new trial upon the whole case."

We will not discuss the other assignments of error, as we find either that the matters complained of were not timely and adequately presented to the trial court or that

they are without substantial merit; however, a new trial will be granted on the ground that the damages awarded by the jury's verdict were so excessive as to indicate not only that the amount of the verdict was the result of passion or prejudice, but that the passion and prejudice may have influenced the jury in making the findings on which any verdict for the respondent must rest.

GRADY, DONWORTH, FINLEY, and WEAVER, JJ., concur.

OLSON, J. (dissenting)—I am unable to agree with the conclusion of the majority. The issue of appellant's liability in this cause has been determined by a jury. The majority finds no error in this regard. Resubmission of this issue might be avoided by a conditional order on the motion for a new trial, granting respondent an alternative of accepting a judgment based on a further reduction in the verdict or having a new trial. Granting a new trial unconditionally appears to be beyond both the necessities of this case and the limits we should observe in disturbing the action of the trial court.

SCHWELLENBACH, C. J., MALLERY, and HAMLEY, JJ., concur with OLSON, J.