The Wabash Printing and Publishing Company *et al. v.* Crumrine.

Filed April 3, 1890.

123   89
160  326
123   89
164  430

No. 13,730.

THE WABASH PRINTING AND PUBLISHING COMPANY ET AL. *v.* CRUMRINE.

LIBEL.—*Damages.*—*Malice.*—A person injured by the publication of a libellous article, or the speaking of false and slanderous words, is entitled to compensation for the injury sustained, whether the person speaking the words or publishing the article did so maliciously or not.

SAME.—*Exemplary Damages.*— *When not Allowed.*—In an action seeking the recovery of damages for the publication of a malicious libel, the alleged

The Wabash Printing and Publishing Company *et al. v.* Crumrine.

libellous charge being that the plaintiff had committed the crime of grand larceny, no exemplary damages can be assessed. The motives which led to the publication are not material.

SAME.—*Evidence.*—*Improper Admission of.*—*When Party can not Complain.*— Where, in an action for malicious libel, the defendant has improperly been permitted to testify over the objection of the plaintiff, as to his motive in making the publication, and his belief as to the truth of the facts stated in the article, and that he had no malice toward the plaintiff, he can not complain that the court allowed the plaintiff to introduce in evidence other articles published in his paper subsequent to the article complained of, derogatory to the plaintiff's character. A party must be consistent. When he asks and obtains a ruling admitting evidence in his own favor, he can not complain when the court adheres to the same rule in admitting the evidence of his adversary.

SAME.—*Malice.*—*Conversation to Show Absence of.*—*Inadmissibility of in Evidence.*—In an action for malicious libel, when the charge was of such a character that exemplary damages could not be assessed, a conversation between the plaintiff's father and a witness for the defendants, at which the plaintiff was not present, and which could only be competent to show what knowledge and evidence the defendants were in possession of and acted upon in publishing the article complained of, as tending to rebut the presumption of malice, was properly excluded.

EVIDENCE.—*Cross-Examination.*—*Conversations.*—*Impeachment of Witness.*—It is not competent on the cross-examination of a witness to interrogate him concerning conversations with a third person which were not referred to in the examination in chief, and which were not called out for the purpose of impeaching the witness by showing that he had made statements out of court different from those he had made on the witness stand.

From the Grant Circuit Court.

*M. H. Kidd* and *N. G. Hunter,* for appellants.

*A. E. Steele, M. Good* and *O. Bogue,* for appellee.

OLDS, J.—This is an action by the appellee against the appellants for publishing a malicious libel. The complaint charged the defendants, the Wabash Printing and Publishing Company, a corporation duly organized and engaged in printing and publishing a weekly newspaper in the city of Wabash, called the "Wabash Weekly Times," and the defendants, John C. Eastman and John Whisler, Jr., as editors and managers thereof, with having published in the said "Wabash Weekly Times," an article charging the plain-

tiff with the crime of grand larceny, in that he stole ten bacon hams of one Thomas Bowsman.

The defendants answered, admitting the publication, but justifying the publication by alleging the truth of the words, setting forth the facts constituting the larceny.

To this answer the plaintiff filed a reply in denial.

There was a trial by a jury and a verdict for the plaintiff for $90, and over the defendants' motion for a new trial, judgment was rendered on the verdict. The overruling of the motion for a new trial is assigned as error.

On the night of June 15th, 1885, ten joints of smoked meat enclosed in grain sacks, and hanging from the rafters in the smoke-house of Thomas Bowsman, were stolen. On the morning of the 16th, the appellee, Crumrine, and his brother-in-law, who was residing with him, brought to the city of Wabash seven hams of smoked meat in grain sacks and sold them to Baumbaur Bros. Appellee slaughtered one hog in November, and five in December, 1884, and sold the sides and placed the hams and shoulders in the smoke-house of his father, Jacob Crumrine, to be smoked; afterwards these joints of meat were placed in paper sacks and hung up in the smoke-house of Jacob Crumrine and marked with appellee's name.

The appellants sought to prove the answer by showing the loss of the meat by Thomas Bowsman on the night of June 15th, 1885, and that it was in grain sacks when taken, and that on the morning of the 16th, the appellee sold to Baumbaur Bros., in the city of Wabash, the same sacks; that appellee slaughtered but five or six hogs the previous fall or early winter, and had the hams of this meat after he had sold the seven hams in Wabash, and that he denied selling the meat to Baumbaur Bros., till he learned it was well known. The appellee sought to meet this by showing that he got the meat he sold from his father's smoke-house the day before he sold it; and the quantity of meat at his father's smoke-house became important.

The Wabash Printing and Publishing Company *et al. v.* Crumrine.

One Frank Lines, a witness for appellants, testified to having gone to the smoke-house of Jacob Crumrine, appellee's father, on the morning of June 23d, 1885, and had a talk with Jacob Crumrine, who exhibited the meat in the smoke-house, and pointed out some hanging up in paper sacks with the name of appellee marked on them.    During the examination of Lines, appellants asked him to state what was said by Jacob as to whose meat it was in the smoke-house, and what Jacob said about how many hogs his son, the appellee, had killed the previous fall, and as to whether or not such conversation was communicated to the defendants by him prior to the publication of the article complained of, which evidence was objected to, and the objection sustained ; and the ruling is complained of as error.    This evidence was properly excluded.    The appellee was not present at the conversation between Lines and his father, and it could not be given in evidence against him ; besides, his father was a competent witness to testify as to the number of hogs that were killed by his son the previous fall, and the only theory on which it could be at all claimed as competent would be to show what evidence and knowledge the defendants were in possession of and acted upon in publishing the article complained of as tending to rebut the presumption of malice. The question of malice was not material in this case.    A person injured by the publication of a libellous article, or the speaking of false and slanderous words, is entitled to compensation for the injury sustained, whether the person speaking the words, or publishing the article, did so maliciously or not, and it is immaterial in assessing compensatory damages whether the person uttering the words, or publishing the article, was induced to do so by reason of malice held by him toward the person of whom the words were spoken, or the article related.    It has, however, been the rule to allow the assessment of exemplary, or vindictive, damages, in actions for libel and slander.

Such damages are assessed upon the theory that whoso-

ever maliciously, wantonly, purposely and cruelly, falsely assails the character of another by publishing or speaking libellous or slanderous words of and concerning such person, is guilty of a wrong, for which he should not only be required to compensate the injured person for the damages sustained, but damages should also be assessed as a punishment to him and as an example to others. In such cases it is proper to prove that there was no malice in the speaking of the words or the publishing of the article; that at the time of the uttering or publishing the person believed they were true; that he acted honestly and in good faith, and that he had no hatred or ill-will against the person of whom he spoke, and that he published the article as a matter of news in the ordinary course of business; and to show that such were his motives, and to rebut malice, it is proper to give in evidence and prove what information he was in possession of at the time of uttering the words or publishing the article. This rule, however, does not apply when the offender is liable to punishment by indictment for the wrong complained of.

Ordinarily damages are limited for torts and breaches of contract to full compensation to the injured party. It is just that the wrong-doer should fully compensate the injured party for damages sustained by reason of the wrongful act, but when such injured person has been made whole, he has received all that he is entitled to receive. It has been a long and well-established rule in this State, that for wrongs, the commission of which subjects the wrong-doer to both a criminal prosecution and civil action, exemplary damages can not be assessed. *Stewart* v. *Maddox*, 63 Ind. 51; *Humphries* v. *Johnson*, 20 Ind. 190; *Koerner* v. *Oberly*, 56 Ind. 284; *Meyer* v. *Bohlfing*, 44 Ind. 238; *Nossaman* v. *Rickert*, 18 Ind. 350; *Taber* v. *Hutson*, 5 Ind. 322; *Butler* v. *Mercer*, 14 Ind. 479; *Struble* v. *Nodwift*, 11 Ind. 64; *Johnson* v. *Vuthrick*, 7 Ind. 137.

The wrong complained of in this case was such as sub-

jected the wrong-doer to a criminal prosecution for libel under the statute of this State, and no exemplary damages could be assessed. *Austin* v. *Wilson*, 4 Cushing, 273 (50 Am. Dec. 766). Hence the motives which led to the publication were not material.

The question to be determined was the truth of the charge made in the article and affirmed in the answer. If it was true the plaintiff could recover no damages. If it was false the plaintiff was entitled to be made whole for the injury he sustained by reason of the publication, whether defendants acted honestly, and believed it to be true, and published it as a matter of news, or knew it to be false, and maliciously published it with the view and purpose of injuring the plaintiff.

The court permitted the appellee to introduce in evidence other articles published by the defendants in the said paper, " The Wabash Times," subsequent to the article complained of, derogatory to the plaintiff's character, but the defendant Whisler had been upon the stand as a witness, and testified as to his motives and belief as to the truth of the facts stated in the article, and that he had no malice toward the plaintiff. And he was permitted to testify as to his feelings toward plaintiff over the objection of the appellant, and upon the theory of rebutting his testimony the articles subsequently published were admitted in evidence.

It was not proper under the issues to prove malice, or the want of malice, as bearing upon the question of damages, and the defendants first procured the ruling of the court allowing them to show the want of malice by the defendant Whisler, and they can not complain when the court, holding to the same rule, admitted evidence of the plaintiff to rebut the evidence so introduced by them. A party must be consistent. When he asks and obtains a ruling admitting evidence in his own favor, he can not complain when the court adheres to the same rule in admitting the evidence of his adversary. It was not competent to prove the want of

malice by Whisler, and the introduction of the articles subsequently published by the paper was permitted to rebut such improper testimony given by Whisler. The appellants introduced the improper testimony of Whisler, and they can not complain when the court adheres to the same ruling and permits the introduction of evidence to rebut it, and such error is not available for the reversal of the judgment. *Nitche* v. *Earle,* 117 Ind. 270 ; *Dinwiddie* v. *State,* 103 Ind. 101 ; *Hinton* v. *Whittaker,* 101 Ind. 344.

Jacob Crumrine, father of the appellee, was called as a witness for the plaintiff, and testified as to the number of hogs killed by the plaintiff in the fall and early winter previous to the alleged larceny, and to the visit of Lines to the smoke-house of the witness, and the meat then in the smoke-house, but was not asked to detail the conversation between Lines and himself at the time; and on cross-examination he was asked by counsel for appellant " what Lines said about the meat," which question was objected to and the objection sustained; and he was also asked " what he said to Lines about it," which was also objected to and the objection sustained. There was no error in the exclusion of this evidence. The witness was not interrogated in the examination in chief as to any conversations between him and Lines, and the questions were not proper in cross-examination. The questions were not asked with a view of impeaching the witness, and showing that he had made statements to Lines different from what he had stated on the witness stand. The witness was permitted to testify and answer all questions as to the amount and number of pieces of meat in the smoke-house at that time, and the number then belonging to appellee, which was the material question and important fact in the case. What was said between Lines and the witness was not material and not proper, except it was to show that the witness had made some statement about the number of pieces of meat different from what he had sworn to as a witness, and as we have said, these ques-

tions objected to were not put in proper form with the view of impeaching the witness, and it is not contended that counsel had that object in view.

There is no error in the record for which the judgment should be reversed.

Judgment affirmed, with costs.

Filed June 7, 1889; petition for a rehearing overruled April 2, 1890.