Hart, J.,
 

 dissenting. In my view7, there is no basis for the allowance of punitive or exemplary damages in
 
 *432
 
 this case, and the trial court did not commit error in refusing to submit this issue to the jury.,
 

 There is basis for good argument against the assess-, ment of punitive damages in a civil action, in any event. The law should not take from a defendant and give to a plaintiff more than justice requires. The allowance of punitive damages in civil actions has no logical basis in law. A plaintiff in a civil action is entitled to be made whole for injury to person or property, including direct and proximate loss,'physical pain and suffering if any inflicted, medical and hospital expenses of any incurred, mental anguish and wounded sensibilities. On what theory of justice is a plaintiff entitled to punitive damages in addition, awarded as a penalty against the defendant!
 

 Penalties are an adjunct of the criminal law. In this state all crimes are defined and made such by legislative enactment. In criminal procedure a jury has no authority to consider or assess a penalty. That is the province of the court, and the statute carefully fixes the limit of the penalty beyond which the court cannot go. A defendant cannot be compelled to testify against himself, and he cannot be made subject to any penalty unless he is convicted of the crime by evidence of guilt beyond a reasonable doubt. In the consideration of punitive damages in a civil action, the defendant may be compelled to testify upon the call of the plaintiff; punitive damages may be assessed on a preponderance of the evidence; and the jury, not the court, without any legislative' sanction or limitation as to the amount of penalty, may make the assessment at its sole discretion. In the administration of criminal justice, penalties, when assessed, are paid to the state. On what theory of justice should penalties be assessed in a civil action and, if assessed, paid to the plaintiff instead of the state? See 20 American Law Register (N. S.), 570.
 

 
 *433
 
 The Supreme Court of Washington, in the case of the
 
 Spokane Truck & Dray Co.
 
 v.
 
 Hoefer, 2
 
 Wash., 45, 55, 25 P., 1072, 11 L. R. A., 689, 26 Am. St. Rep., 842, in discussing the subject of punitive damages, quoted from the case of
 
 Murphy
 
 v.
 
 Hobbs,
 
 7 Colo., 541, 5 P., 119, as follows:
 

 “ ‘The reflecting lawyer is naturally curious to account for this “heresy” or “deformity,” as it has been termed. Able and searching investigations made by both jurists and writers disclose the following facts concerning it,
 
 vis.:
 
 That it was entirely unknown to the civil law; that it never obtained a foothold in Seot(land; that it finds no real sanction in the writings of Blackstone, Hammond, Comyns, or Rutherford;-that it was not recognized in the earlier English cases; that the Supreme Courts of New Hampshire, Massachusetts, Indiana, Iowa, Nebraska, Michigan and Georgia have rejected it in whole or in part; that of late other states have falteringly retained it because committed so to do; that a few years ago it was correctly said, “At last accounts the Court of Queen’s Bench was still sitting hopelessly involved in the meshes of what Mr. Chief Justice Quain declared to be ‘utterly inconsistent propositions’ ”; and that the rule is comparatively modern, resulting in all probability from a misconception of impassioned language and inaccurate expressions used by judges in some of the earlier English cases.’ ”
 

 In the case of
 
 Brown
 
 v.
 
 Swineford,
 
 44 Wis., 282, 289, 28 Am. Rep., 582, involving an assault and battery of which the defendant had already been convicted and fined in a criminal action, the plaintiff, as a witness in the civil action, was permitted to make an indecent exposure of his person before 'the jury. * The court, after censuring the trial court for permitting such an exhibition, said:
 

 “The argument and consideration of this case have
 
 *434
 
 gone to confirm the present members of this court in tfieir disapprobation of the rule of exemplary damages which they have inherited. But they # * do not feel at liberty to change or modify the rule, at so late a day, against the general current of authority elsewhere. * * * if a change should now be made, it is with the Legislature.”
 

 The Supreme Court of Indiana, in revolt against the award of punitive damages, has repeatedly held that only compensatory damages can be awarded where the wrong complained of is punishable under the-criminal statutes. The theory adopted by the court in so holding is that the constitutional prohibition against twice putting in jeopardy means that no person shall be made liable to be punished twice for the same offense; and that- when a state adopts a criminal statute and annexes penalties it destroys at once all other or further penal'liability, even though no criminal penalty has yet been assessed.
 
 White
 
 v.
 
 Sun Publishing Co.,
 
 164 Ind., 426, 73 N. E., 890;
 
 Wabash Printing & Publishing Co.
 
 v.
 
 Crumrine,
 
 123 Ind., 89, 21 N. E., 904;
 
 Nossaman
 
 v.
 
 Rickert,
 
 18 Ind., 350.
 

 ' In other states, not following this rule, a money penalty in many instances has been twice assessed against the same defendant.
 
 Cook
 
 v.
 
 Ellis,
 
 6 Hill., 466, 41 Am. Dec., 757. This matter is well illustrated in the case of
 
 Roberts
 
 v.
 
 Mason,
 
 10 Ohio St., 277. The defendant there had been indicted for stabbing with intent to kill. After criminal trial and disagreement of the jury, he had pleaded guilty to assault and battery whereupon he “had been sentenced to a fine of $100, and imprisonment for six days in the dungeon of the county jail, and to pay the costs of the prosecution, amounting to $557.57. ’ ’ In the civil action for damages the defendant asked the.court to charge the jury that since he had already been punished on the criminal side of the court for the same offense, the jury could
 
 *435
 
 not, in the civil action, give plaintiff anything more than compensatory damages and could not increase that amount by including anything for punitive damages. The court refused the request and charged the jury that if the conduct of the defendant “was the result of settled hatred against the plaintiff, or of a cruel and malignant disposition,” the jury could go beyond compensation and “may add any sum you may think reasonable by way of punishment of the defendant, and of example to the public.” But, said the court, • “in adding any sum to your verdict by way of punishment and example, it will be proper for you to consider the punishment, fine and costs adjudged against the defendant in the criminal prosecution.” After the court charged the jury, as above indicated, the jury inquired of the court whether they were to consider plaintiff’s lawyer’s fees as compensatory damages, whereupon the court replied that the jury could allow reasonable attorney fees as part of plaintiff’s actual or compensatory damages. The jury then awarded the plaintiff $700, and the verdict and judgment on review were sustained by this court. This court in that case expressed the view that it was questionable whether the evidence of' the criminal conviction was not improper, we may suppose, on the theory that it had a tendency to reduce the amount of the punitive damages which the jury might award as the personal right of the plaintiff. See 6 Central Law Journal, 74.
 

 Moreover, in cases where exemplary damages are recoverable, the court may permit the introduction of evidence as to the wealth of the defendant and his ability to pay such damages. The reason assigned for this practice is that it aids the jury in determining what amount would constitute punishment. The weak theory is that a penalty which would be sufficient to reform a poor man would not tend to rectify the misconduct of a rich man, and therefore the richer the de-
 

 
 *436
 
 fendant the larger the punitive damage award should be. If this is insufficient to give the jury the proper cue to “smart” the defendant, the Supreme Court of Illinois
 
 (Schmitt
 
 v.
 
 Kurrus,
 
 234 Ill., 578, 85 N. E., 261), holds that the impecunious position of the plaintiff may be shown. It was shown in the last cited named case that plaintiff “was a poor man, having nothing but a little household furniture, and owing considerable debts.” What more should be needed to poison and prejudice a jury! The fact is that the whole scheme of punitive damages lies in the field of passion and prejudice.
 

 There are other respects in which the doctrine of punitive damages serves to work oppression and injustice. In cases where joint or concurrent tort-feasors are joined, in a single action, a joint judgment, of course, may be taken against all, including aggregate punitive damages in a proper case to punish all the defendants. The accessibility of the wealth of any defendant will probably determine against whom the judgment creditor chooses to levy execution. The one defendant caught in the levy, albeit he may be the least culpable, may be obliged to pay the entire judgment including the punitive damages assessed against his more culpable tort-feasors, and since they are joint tort-feasors he may claim no contribution or reimbursement from them.
 

 Another instance where injustice may occur through the award of punitive damages is in cases where two persons may each have a separate cause of action against a third person arising out of the same tortious conduct of the latter. Each may bring a separate action and each recover full punitive damages from the same defendant. This is illustrated by the case of
 
 Luther
 
 v.
 
 Shaw,
 
 157 Wis., 231, 147 N. W., 17, wherein the defendant was charged with seduction and breach of promise to marry. He was sued by the young lady
 
 *437
 
 for breach of promise in which suit she recovered both compensatory and punitive damages. He was also sued by her father, in an independent action in which the latter recovered both kinds of damages
 
 (Luther
 
 v.
 
 Shaw,
 
 157 Wis., 234, 147 N. W., 18).
 

 The foregoing observations are the basis of my belief that the application of the doctrine of punitive damages should not be extended. It is likewise my belief that the decision in the instant case clearly extends and broadens the field within which punitive damages may be awarded. ■-/
 

 This court has, over the years, recognized the propriety of submitting to a jury the question of the assessment of punitive damages in certain tort cases where the defendant’s wrongdoing has been intentional and deliberate, or has the character of outrage frequently associated with crime. Not all tort actions are of such a character as to-warrant the assessment of punitive damages. Generally the application of the doctrine is confined to cases where there is involved actual malice, interference with marital relations, or wanton personal injury, such as in cases of seduction, assault and battery, false imprisonment, or wrongful expulsion from public passenger vehicles or places of public entertainment.
 

 However, the instant action, as I view it, is one for the rescission of a contract of sale of merchandise on the ground of misrepresentation of the quality of goods sold. The petition does not make any case for punitive damages. The plaintiff alleges that the defendant, through his agents, represented that a certain wrist watch which she purchased from him was a new watch whereas it was not new and would not give performance as such; that she later learned that it was a repaired or rebuilt watch, whereupon she offered to return the watch and demanded the return of her money. The plaintiff then alleges that she is ‘4 entitled
 
 *438
 
 to the recovery of punitive damages from the defendant.” There are no allegations of operative facts furnishing a basis for the recovery of punitive damages, and the concluding statement just quoted as to damages is a pure legal conclusion and, in effect, is a part of the prayer of her petition.
 

 The petition makes out a cause of action the pattern of which calls for the specific remedy provided for under paragraph one, subparagraph (d) of Section 8449, General Code.
 

 Such provision reads:
 

 “When there is a breach of warranty by the seller, the buyer may, at his election — * * *
 

 “ (cl.) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid. ’ ’ •
 

 The same section of the General Code then provides:
 

 “When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy therefor can be granted.”
 

 The plaintiff, having sought rescission of contract, which remedy alone is warranted by the allegations of her petition, Section 8453, General Code, has no application.
 

 I claim that this is an action sounding in contract and that it is governed by the authority of
 
 Ketcham
 
 v.
 
 Miller,
 
 104 Ohio St., 372,136 N. E., 145, in which case this court held that “punitive damages are not recoverable in an action for breach of contract.” Reference to the allegations of the amended petition in that case will indicate that the plaintiff made strenuous effort to convert the breach of a contract of lease into a malicious tort, but this court held that “the gravamen of the complaint is the breach of the contract, and the action sounds in contract, and the averment that the
 
 *439
 
 breach was unlawful, wilful, wanton and malicious does not change the action from one
 
 ex contractu
 
 to one
 
 ex delicto.”
 

 The
 
 Ketcham case,
 
 decided in 1922, is in line with modern authority throughout the country and should not be modified or weakened. We should follow it as authority in this case rather than the case of
 
 Roberts
 
 v.
 
 Mason, supra,
 
 a clear tort case of assault and battery, decided more than 85 years ago.
 

 A case which seems to me to be directly in point is the case of
 
 Cable
 
 v.
 
 Bowlus,
 
 21 C. C., 53, 11 C. D., 526, affirmed by this court without opinion in 1903
 
 (Bowlus v. Cable,
 
 69 Ohio St., 563, 70 N. E., 1115). In that case an action was brought by the plaintiff to recover damages for misrepresentation and fraud in a contract to purchase mining stock. It was claimed that the president of the mining company represented to the plaintiff, as a purchaser of stock, that the title to the mine was good, and that there was no indebtedness upon the property, whereas the company had taken title under a title bond upon which it was to pay $60,000 and upon which it had paid but $15,000. Six months later, the payments, not being made, the title was forfeited. The plaintiff asked that he recover both compensatory and punitive damages. A charge requested by the plaintiff permitting a recovery of punitive damages was refused by the trial court. The Circuit Court of the Sixth District held there was no error in the refusal and the judgment was affirmed by this court.,
 

 15 American Jurisprudence, 709, Section 273, says:
 

 “According to the overwhelming weight of authority, exemplary damages are not recoverable in actions for breach of contract, although there are dicta and intimations in some of the cases to the contrary. This rule does not obtain, however, in those exceptional cases where the breach amounts to an
 
 independent, willful tori,
 
 in which event exemplary damages may be
 
 *440
 
 recovered under
 
 proper allegations of malice, wantonness, or oppression
 
 — as, for example, in actions for breach of marriage contracts.” (Italics mine.) See annotation 84 A. L. R., 1345, 1346, and cases reviewed, including
 
 Ketcham
 
 v.
 
 Miller, supra.
 

 25 Corpus Juris Secundum, 716, Section 120, says:
 

 “As a general rule exemplary damages are not recoverable in actions for the breach of contracts, irrespective of the motive on the part of defendant which prompted the breach. No more can be recovered as damages than will fully compensate the party injured. ’ ’
 

 There is another reason why no error intervened in this case with the result that the judgment of the Court of Appeals should be affirmed. The principal ground .of complaint of the plaintiff in the instant case is that the trial court refused to give to the jury before argument her special request to charge, which was as follows:
 

 “If from all the evidence you find that the plaintiff in purchasing the wrist watch from the defendant
 
 relied on .the representations of the defendant, his agents, or servants, that it was a new watch and that said, representations were false and were known by the defendant, his agents or servants, to be false;
 
 and that the conduct of the defendant, his agents or servants, involved ingredients of fraud which constituted a wanton or reckless disregard of the rights of the plaintiff, and that relying on said false and fraudulent representations the plaintiff was damaged; then I charge you that in addition to her actual damages the plaintiff would be entitled to recover what is known in law as punitive or exemplary damages. * * *
 

 “If from all the evidence you find that the plaintiff 'had no knowledge of watches
 
 and relied on the representation of the defendant,
 
 his agents or servants, and that said representations were false, and known by them to be false, and if you further find from all the
 
 *441
 
 evidence that said conduct of the defendant or his agents or servants toward the plaintiff involved ingredients of malice, fraud or insult, or wanton disregard of the rights of the plaintiff, and that relying on said false and fraudulent representations the plaintiff was damaged, then I charge you that in addition to her actual damages, exemplary damages would be allowable at your hands to the plaintiff.” (Italics mine.)
 

 The trial court was justified in refusing to submit this special request to charge to the jury, not only because it presented the issue of exemplary damages, which in my view was not in the case either by pleadings or evidence, but because the request to charge was otherwise incomplete and erroneous. It will be noted that it entirely omitted from the statement of facts necessary to be found by the jury to warrant a recovery by the plaintiff, the essential fact that the claimed false representations were not only relied upon by the plaintiff but that they were actually made by the defendant. In other words, the requested charge assumed that the false representations were made by the defendant, an issuable fact which was in sharp controversy.
 

 The requested charge was defective in another respect. It says that if the jury found certain facts to exist, then ‘ ‘ in addition to her actual damages the plaintiff
 
 would be entitled to recover what is known in law as punitive or exemplary damages.”
 
 (Italics mine.) The request to charge made punitive damages recoverable as a matter of right. This is erroneous. Punitive damages, in any event, must be left to the discretion of the jury and are never recoverable by the plaintiff as a matter of right. 15 American Jurisprudence, 705, Section 269, and cases cited.
 

 Exemplary damages are not favored in the law and the awarding of them should be exercised with great caution. Under many circumstances the submission
 
 *442
 
 of the issue of punitive damages furnishes an opportunity for the exercise of passion and prejudice upon the part of a jury, resulting in an unjust award. In this case the plaintiff recovered full compensatory damages in the sum of $38.15. By successive appeals she has carried on this litigation for the sole purpose of securing an award of punitive damages. We are now remanding the case to the trial court to begin the process all over again and to require the trial court to submit to another jury .the question of punitive damages and to advise it that the plaintiff may recover such damages as it may deem proper, not howuver in excess of the sum of $5,000, the amount prayed for in the petition which is more than one hundred and twenty-eight times the amount of the actual damage suffered. To say the least, the course of this litigation is unfortunate.
 

 In my opinion, the instant case presents no justification 'for the award of exemplary damages, and the judgment should be affirmed.